**COREGIS INSURANCE COMPANY, Plaintiff,**

v.

**Jonathan WHEELER, Defendant and Third Party Plaintiff,**

v.

**BERTHOLON–ROWLAND, INC. t/a Colburn Bertholon–Rowland, Inc., Third Party Defendant.**

No. CIV.A. 97–7941.

United States District Court, E.D. Pennsylvania.

Nov. 12, 1998.

Jeffrey A. Goldwater, Chicago, IL, for Plaintiff.

Jonathan Wheeler, Philadelphia, PA, for Defendants.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Coregis Insurance Company ("Coregis") has brought this declaratory judgment action against defendant Jonathan Wheeler ("Wheeler") pursuant to 28 U.S.C. § 2201, seeking a declaration that Coregis has no duty to defend or indemnify Wheeler in connection with a legal malpractice claim brought against him by Anita Wendler. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

Presently before the Court is the motion of plaintiff, Coregis, for summary judgment (Document No. 11) and the response of defendant Jonathan Wheeler thereto. For the reasons stated below, the motion will be granted.

## I. BACKGROUND

### A. The Underlying Litigation

The malpractice claim against Wheeler arises out of his representation of Anita Wendler ("Wendler"). Wheeler was retained by Wendler in February 1991 to represent her on matters concerning alleged injuries she received while hospitalized at Nazareth Hospital in March 1989. The two claims which allegedly arose from these injuries and for which Wendler allegedly retained Wheeler's representation were: (i) a medical malpractice claim against the doctor and (ii) a slip and fall claim against the hospital. Wheeler filed a lawsuit on behalf of Wendler on March 6, 1991 against the doctor and the hospital, but did not include any allegations pertaining to the slip and fall claim. The statute of limitations on the slip and fall claim expired in or about March 1991. In December 1994, Wheeler filed a petition to

add the slip and fall to the complaint, but the petition was denied by the trial court. Nazareth Hospital was subsequently dismissed from the lawsuit. Wendler settled her medical malpractice claim against the doctor in May 1996, but received no compensation for the slip and fall claim against the hospital.

In September 1996, Wheeler applied to Coregis for professional liability insurance. Coregis issued a policy insuring Wheeler, with Bertholon–Rowland, Inc. t/a Colburn Bertholon–Rowland, Inc. ("Bertholon–Rowland") as the broker. The insurance policy included an exclusion clause ("Exclusion B"). The clause excludes:

> [A]ny CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY might be expected to be the basis of a CLAIM.

(Plt's Motion, Exh. A (capitalization in original)). A claim is defined as: "a demand made upon any INSURED for DAMAGES, including, but not limited to, service of suit or institution of arbitration proceedings against any INSURED." (Id. (capitalization in original)).

On December 5, 1996, Wendler brought a legal malpractice suit against Wheeler on the grounds of negligent representation with respect to her slip and fall claim. Wheeler had attempted to settle this matter by reducing the fee he charged to Wendler in the medical malpractice settlement. Indeed, Wheeler asserts in his Affidavit in Opposition to Plaintiff's Motion For Summary Judgment (Document 13, Exh. B) ("Def.Affidavit") that he believed that the matter had been resolved and that Wendler would not pursue a malpractice action against him "for the misun-

derstanding regarding the fact that her bathroom fall was not included in the allegations of the Complaint against John Ross, M.D. and Nazareth Hospital." (Def. Affidavit at ¶ 12). Wheeler asserts that he believed that Wendler was wholly satisfied with his representation of her. (Id. at ¶ 14).

Wheeler sent a letter to Coregis on December 19, 1996 notifying the insurance company of Wendler's claim against him. (Plt's Motion, Exh. C). Shortly thereafter, Coregis informed Wheeler that coverage was denied on Wendler's claim because Wheeler had breached the prerequisite conditions of the policy [1] and also because the claim was explicitly excluded from coverage under Exclusion B. (Plt's Motion, Exh. D).

### B.  Procedural Background

On December 23, 1997 Coregis filed a complaint for declaratory judgment against Wheeler in this action alleging two counts: prior knowledge of Wendler's claim (Count 1) and rescission (Count 2). On December 31, 1997, Wheeler commenced a related lawsuit in the Court of Common Pleas of Philadelphia County against Coregis, Wendler and Bertholon–Rowland [2] on the same issues raised by Coregis in the federal court action, but with additional claims of violation of the Pennsylvania bad faith statute, 42 Pa. Stat. Ann. § 8371 (West 1998), against Coregis and negligence against Bertholon–Rowland.

On March 9, 1998, Wheeler filed with this Court a motion to dismiss pursuant to Federal Rule of Civil Procedure 19 for failure to join necessary and indispensable parties and the doctrine of abstention. That motion was subsequently denied by this Court. See Memorandum–Order dated July 24, 1998 (Document No. 18), cited at Coregis Insurance Co. v. Wheeler, 180 F.R.D. 280 (E.D.Pa.

---

1. Prior to issuing the insurance policy to Wheeler, Wheeler completed an application containing the following question:

   > Is the applicant, its predecessor firms or any lawyer proposed for this insurance aware of any circumstance, act, error, omission or personal injury which might be expected to be the basis of a claim or suit?

   (Def.'s Motion to Dismiss, Exh. C) (Document No. 7). Coregis contends that Wheeler violated a

precondition to the insurance policy by answering "no" to this question.

2. This suit by Wheeler could not be commenced against Coregis, Wendler and Bertholon–Rowland in the United States District Court for the Eastern District of Pennsylvania because the inclusion of Wendler and Bertholon–Rowland would destroy this Court's subject matter jurisdiction in a diversity action pursuant to 28 U.S.C. § 1332.

1998). On May 29, 1998, the Court of Common Pleas of Philadelphia County, dismissed without prejudice Wheeler's state court action and the order explicitly granted Wheeler the "right to refile after the resolution of related federal court action." (Document No. 15, Exh. A). On August 6, 1998, Wheeler filed a third-party complaint against Bertholon–Rowland, Inc. in this action. (Document No. 21).

## II. STANDARD OF REVIEW

### A. Summary Judgment

The standard for a summary judgment motion in federal court is set forth in Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition, a dispute over a material fact must be "genuine," *i.e.*, the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.*

The moving party has the initial burden to identify evidence that it believes shows an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is

an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548.

Generally, if the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not rely merely upon bare assertions, conclusory allegations or suspicions, but must set forth specific facts demonstrating that there is a genuinely disputed factual issue for trial. *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982). If the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

### B. Review of Insurance Policies [3]

Under Pennsylvania law, the primary consideration in interpreting a contract, including an insurance contract, is the language of the contract itself. *Bateman v. Motorists Mut. Ins. Co.*, 527 Pa. 241, 590 A.2d 281, 283 (1991). That language must be construed in accordance with its plain and ordinary meaning, *O'Brien Energy Sys., Inc. v. American Employers' Ins. Co.*, 427 Pa.Super. 456, 461, 629 A.2d 957, 960 (1993), *appeal denied*, 537 Pa. 633, 642 A.2d 487 (1994), and the task of construing an insurance policy is generally performed by a court, rather than a jury, *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 304, 469 A.2d 563, 566 (1983). An insurer has a duty to indemnify its insured when it is established that the damages of the insured are within the policy coverage. *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 831 n. 1 (3d Cir.1995). In addition, exclusions in insurance policies are strictly construed against the insurer. *First Pennsylvania Bank, N.A. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 397 Pa.Super. 612, 618, 580 A.2d 799, 802 (1990).

---

**3.** It is undisputed that the law of Pennsylvania applies.

The Supreme Court of Pennsylvania has clearly articulated the fundamental principles of insurance contract interpretation in this Commonwealth:

> Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Standard Venetian Blind,* 503 Pa. at 305, 469 A.2d at 566 (citations omitted). Applying Pennsylvania law, the Third Circuit has elaborated upon these principles:

> A court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them. A provision of an insurance policy is ambiguous if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning.

*Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts and Youngs, P.C.,* 821 F.2d 216, 220 (3d Cir.1987) (quoting *Northbrook Ins. Co. v. Kuljian Corp.,* 690 F.2d 368, 372 (3d Cir. 1982)) (internal citations omitted).

## III. DISCUSSION

Exclusion B consists of two clauses. First, for the exclusion to apply, the claim at issue must arise "out of an act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy." (Plt's Motion, Exh. A). Here, the claim Wheeler is making under the policy arises from the suit by Wendler against Wheeler for failing to include allegations pertaining to the slip and fall injury in her complaint against the hospital and the subsequent expiration of the statute of limitations on her claim. The statute of limitations ran in or about March 1991. The possibility of raising the claim was extinguished when her petition to amend her complaint against the hospital was denied in April 1995. The lawsuit was settled on May 6, 1996. The effective date of the professional liability insurance policy is November 1, 1996. Thus, the act, error or omission forming the basis of the alleged legal malpractice took place prior to the inception of the policy, thereby satisfying the first condition.

Second, Exclusion B the policy requires the plaintiff here to show that the "INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY might be expected to be the basis of a CLAIM." (Plt's Motion, Exh. A). Wheeler contends that, based upon his conversations with Wendler, he did not believe Wendler intended to file a malpractice action against him. To support his contention, Wheeler asserts that he settled any potential claim by reducing his counsel fees in the underlying action between Wendler and Dr. Ross. (Memorandum in Support of Defendant's Answer to Plaintiff's Motion for Summary Judgment (Def.'s Memorandum) at unnumbered 1–2; Def. Affidavit at ¶¶ 9–12). Accordingly, Wheeler argues and asserts that he could not have reasonably foreseen that Wendler would file a malpractice suit against him. (Def.'s Memorandum at unnumbered 4–5; Def. Affidavit at ¶ 13). In essence, Wheeler is arguing that the Court must consider his subjective state of mind when considering whether a "reasonable person" with his knowledge could have foreseen that a claim might be filed against him. (*Id.*) At the very least, Wheeler argues that in viewing the evidence most favorably to himself, a genuine issue of fact exists as to whether Wheeler knew or had reason to believe that he would be sued for malpractice. (*Id.*) Coregis, however, maintains that the clause should be interpreted under an objective standard and that subjective belief of Wheeler—that Wendler would not pursue a malpractice claim against him—is irrelevant.

The Pennsylvania Supreme Court has not had occasion to interpret "reasonably foreseeable" in the context of professional liability contracts. Therefore, in the absence of guidance from the Pennsylvania Supreme Court, I rely on recent federal district court cases and precedent from the Court of Appeals for the Third Circuit which, in affirming or applying Pennsylvania law, have interpreted the same or similar contract language. *See, e.g., Selko v. Home Insurance Co.,* 139 F.3d 146, 151 (3d Cir.1998); *Home Ins. Co. v. Powell,* 1997 WL 370109 (E.D.Pa. June 13, 1997), *aff'd,* 156 F.3d 1224, (3d Cir. May 26,

1998) (TABLE, No. 97–1491); *Mt. Airy Ins. Co. v. Thomas*, 954 F.Supp. 1073, 1074, 1076–1080 (W.D.Pa.1997), *aff'd*, 149 F.3d 1165 (3d Cir. Mar.13, 1998) (TABLE, No. 97–3137, 97–3138); *Pelagatti v. Coregis Group*, 1996 WL 184474 (E.D.Pa. April 10, 1996). The Court of Appeals for the Third Circuit recently attempted to harmonize these cases holding on the one hand that interpreting such exclusion clauses involves both a subjective inquiry and an objective inquiry, and on the other hand that the district court cases, whatever their formulation, have "correctly tracked the meaning of the language." *Selko*, 139 F.3d at 151.

In *Selko*, the Court of Appeals for the Third Circuit held that determining whether an attorney had a "basis to believe" that he had breached a professional duty required a two-step analysis.[4] First, it must be shown that the insured subjectively knew certain facts. *Id.* at 152. Second, the court must determine whether objectively "a reasonable attorney in possession of such facts would have a basis to believe that the insured had breached a professional duty." *Id.* The Court noted that interpreting the language in such a fashion does not relieve the insurer of its burden to prove that the necessary underlying facts were actually known to the insured. *Id.* By the same token, however, the insured may not successfully defend on the ground that "he did not understand the implications of conduct and events that any reasonable lawyer would have grasped." *Id.* The Court reasoned that it is justifiable for the insurer to refuse coverage for claims based on preexisting but undisclosed misconduct by the insured attorney and that it is not "unreasonable to tie such an exclusion to an even-handed 'reasonable attorney' assessment, rather than to speculation concerning the individual attorney's subjective understanding." *Id.* In conclusion, the Court reasoned that "[u]nder the mixed standard ... coverage does not turn on psychoanalysis, yet the attorney is not made accountable for matters he did not know about, nor for matter that would not cause a reasonable attorney to foresee a claim." *Id.*

Although the *Selko* Court interpreted a exclusionary provision containing different language, its analysis and reasoning is applicable to this case. Indeed, the *Selko* Court noted that in *Mt. Airy Ins. Co. v. Thomas* the District Court "wrote comprehensively to the same effect" in an opinion which rejected a subjective analysis in interpreting an exclusion clause identical to the one in this case. *See Selko*, 139 F.3d at 151; *Thomas*, 954 F.Supp. at 1079. In *Thomas*, the Court applied a "reasonable person" standard to determine whether a lawyer "knew or could have reasonably foreseen" that his conduct might be expected to be the basis of a claim. 954 F.Supp. at 1074, 1079. In so doing, the Court distinguished between facts which are known to an attorney and, when view by a reasonable person, could give rise to a claim of malpractice, and impressions which lead the attorney to believe that the client will not pursue a claim for malpractice. *Id.* The Court reasoned that disputes over "whether the defendant believed, on the basis of his relationship with his client or his impression of that client's reaction to the situation, that the client would make a claim is not relevant to our analysis." *Id.* at 1080.

Applying the analysis of the foregoing precedent, I find that the only plausible interpretation of the record here is that a reasonable person in Wheeler's shoes would have realized in September of 1996, when Wheeler applied for the insurance, that he had committed an act, error or omission that could be the basis of a malpractice suit against him. *See Thomas*, 954 F.Supp. at 1079–80; *Pelagatti*, 1996 WL 184474 at *3–4. Wheeler knew that, due to a "misunderstanding," he neglected to include a claim against the hospital for Wendler's injuries resulting from a fall while she was a patient. (Def. Affidavit at ¶¶ 5, 12; Plt's Motion, Exh. B). Wheeler also knew that the trial court had dismissed his attempt to add the claim after the statute of limitations had run. (Def. Affidavit at ¶ 7). When the case settled, Wheeler lowered his fee allegedly to compensate Wendler for any omission or error on his part; however, there

---

**4.** In *Selko*, the Court interpreted language in a policy exclusion provision which stated that "the insured had no basis to believe that the insured had breached a professional duty." 139 F.3d at 151–52.

is an uncontroverted inference that Wheeler knew he did not have a release from Wendler that waived any claims she may have against him. (Def. Affidavit at ¶ 10; Plt's Motion, Exh. E & F).[5]

Finally, it is clear that Wheeler spoke to Wendler about the possibility that she might sue him for malpractice.[6] (Def. Affidavit at ¶ 12; Plt's Motion, Exh. F). Presumably these discussions took place at or close to the time of settlement, just three to four months before Wheeler applied for malpractice insurance. In light of these facts, I find that a reasonable person in the position of Mr. Wheeler would foresee that his alleged conduct "might be expected to be the basis of a CLAIM or suit." *See Pelagatti*, 1996 WL 184474 at *4. Applying this legal conclusion to Exclusion B of the Coregis policy, the language of which is clear and unambiguous, Wheeler is not entitled to coverage for the Wendler claim under the Coregis policy as a matter of law. No reasonable jury could find otherwise and there is no genuine issue of material fact.

5. It is worth noting that the Rules of Professional Conduct provide that:

> A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, nor shall a lawyer settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

RULES OF PROFESSIONAL CONDUCT 1.8(h) (adopted by Order of the Supreme Court of Pennsylvania dated October 16, 1987 to take effect April 1, 1988).

6. Indeed, Wheeler describes the sequence of events as follows:

> Prior to the settlement, WENDLER complained that WHEELER had not included in the suit against Nazareth and John Ross, M.D. a claim for personal injury arising from a slip and fall which is alleged to have occurred during her hospitalization in 1989. This alleged omission was discussed by WHEELER and WENDLER in connection with the settlement of the case against Nazareth and John Ross, M.D. and WENDLER agreed to settle the case for Ninety–Thousand ($90,000.00) Dollars. In consideration for their disagreement concerning the alleged failure by WHEELER

## IV. CONCLUSION

Based upon the foregoing analysis, summary judgment will be granted.[7]

to include the slip and fall allegation in the Complaint which WENDLER had reviewed and verified, WHEELER compromised his fee from $36,000.00 to $20,000.00 in order to facilitate and effectuate the settlement. WENDLER expressed satisfaction with this accommodation and informed WHEELER that she did not intend to pursue a legal malpractice claim against him.

(Def.'s Motion at unnumbered 1–2.).

7. Plaintiff's motion for summary judgment is granted on the basis of the prior knowledge exclusion contained in the policy (Exclusion B.) *See* Complaint (Document No. 1, Count I). The Court notes that the complaint also contains a count for recision. *See* Complaint, Count II. Coregis, however, does not argue for recision in its Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment. Moreover, Coregis requests the identical relief on both counts of the complaint. *See* Complaint at ¶¶ 23, 29 ("WHEREFORE, Coregis prays that this Court enter judgment as follows: A. Declaring that Coregis has no duty to defend or indemnify Jonathan Wheeler in the Wendler lawsuit; and B. For such relief as this Court deems just and equitable, including the award of Coregis' costs."). Because the Court is granting the requested relief, Count II will be dismissed as moot with the right to reassert the claim when or if appropriate, in this lawsuit or otherwise.