Daniel G. **EHRGOOD, Esquire; Ehrgood and Enck; and Pauline K. Hoover, Executrix of the Estate of Warren D. Hoover, Plaintiffs,**

v.

**COREGIS INSURANCE COMPANY, Defendant.**

No. Civ.A.1 CV–98–285.

United States District Court, M.D. Pennsylvania.

Dec. 7, 1998.

**440**

James T. Reilly, Reilly, Wolfson, Sheffey, Schrum & Lundberg, Lebanon, PA, for Daniel G. Ehrgood, plaintiff.

M. Jannifer Weiss, Lebanon, PA, for Pauline K. Hoover.

Brigid Quinn Alford, Harrisburg, PA, Jeffrey R. Boswell, Harrisburg, PA, Boswell, Tinter, Piccola and Wickersham, Harrisburg, PA, Andrew S. Nadolna, Megan W. Bartolone, Bollinger, Ruberry & Garvey, Livingston, NJ, Jeffrey A. Goldwater, Bollinger, Ruberry & Garvey, Chicago, IL, for Coregis Insurance Co, defendant.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court are cross-motions for summary judgment filed by Defendant Coregis Insurance Company ("Coregis") and Plaintiffs Daniel G. Ehrgood, Esquire and Ehrgood and Enck (collectively "Ehrgood Plaintiffs"). The issues have been briefed, and the motions are now ripe for disposition.

### I. *Background*

The instant case is a declaratory judgment action regarding professional liability insurance coverage. The following facts are undisputed: At all times relevant to the instant case, Ehrgood and Enck was a partnership with its principal place of business in Lebanon, Pennsylvania. Daniel G. Ehrgood was a partner in the law firm of Ehrgood and Enck. Coregis is an insurance company with its principal place of business in Chicago, Illinois. (Compl. ¶ 6; Coregis's Ans. ¶ 6.)

On March 26, 1993, Plaintiff Pauline K. Hoover's husband, Warren D. Hoover, was killed in a motor vehicle accident.[1] Subsequently, Hoover retained the Ehrgood Plaintiffs to represent her and the Estate of Warren D. Hoover ("Estate") in a wrongful death and survival action ("underlying action"). On March 24, 1995, the Ehrgood Plaintiffs filed a Praecipe to Issue Writ of Summons in connection with the underlying action.

On April 1, 1995, Coregis issued the first of three professional liability insurance policies to the Ehrgood Plaintiffs. The policy issued was numbered 52–430410–4 ("1994–1995 policy"). On April 1, 1996, Coregis issued a renewal policy numbered PLL 319649–4 which terminated on March 31, 1997 ("1996–1997 policy").

On May 16, 1996, the Ehrgood Plaintiffs filed a Praecipe to Re-issue Writ of Summons in the underlying action. On October 15, 1996, the defendants in the underlying action filed Preliminary Objections to the Complaint, asserting that neither the Writ of Summons nor the Re-issued Writ of Summons had been served properly. The Ehrgood Plaintiffs did not file a response or a brief in opposition to the Preliminary Objections.

On February 4, 1997, the Ehrgood Plaintiffs completed a renewal application for a Coregis policy. In completing the application, the Ehrgood Plaintiffs answered "No" to the following question:

> No. 10. Is the applicant, its predecessor firm, or any individual proposed for this insurance aware of any circumstance, act, error, omission, or personal injury which might be expected to be the basis of a legal malpractice claim or suit that has not been previously reported to Co-

---

1. The Ehrgood Plaintiffs originally named Hoover as a Defendant in this action. Pursuant to its memorandum and order dated No-vember 6, 1998, the court, however, realigned Hoover as a Plaintiff.

regis? If yes, please complete a Claim Information Supplement.

Following receipt of the renewal application, Coregis issued a third policy, numbered PLL 324008-1, to the Ehrgood Plaintiffs for the period from April 1, 1997 to April 1, 1998 ("1997–1998 policy").

On April 21, 1997, the court in the underlying action granted the defendant's Preliminary Objections and dismissed the case. On May 9, 1997, attorney M. Jannifer Weiss sent Daniel Ehrgood a letter advising him that her law firm had been retained by Hoover with regard to the death of Hoover's husband. The letter further stated, in relevant part: "At your earliest convenience, kindly provide me with the name, address, telephone number and policy number of your insurance carrier. I am in hopes that this matter will be amicably resolved to the mutual satisfaction of all parties without the necessity of filing suit." (Compl.Ex.K.)[2] In August 1997, the Ehrgood Plaintiffs reported the matter to Coregis as a potential claim. On September 25, 1997, Hoover, as executrix of the Estate, filed a legal malpractice action against the Ehrgood Plaintiffs and served them with the same on September 27, 1997.

On January 1, 1998, the Ehrgood Plaintiffs canceled the 1997–1998 policy.[3] Coregis did not refund the premiums paid for the period from April 1, 1997 to December 31, 1997 to the Ehrgood Plaintiffs. On January 20, 1998, they instituted this action in the Court of Common Pleas of Lebanon County, Pennsylvania, seeking a declaratory judgment that Coregis must defend and indemnify them against Hoover's legal malpractice action ("Hoover malpractice claim"). Coregis removed the action to this court on February 19, 1998. It then filed an answer and counterclaim for rescission of the 1997–1998 policy on March 27, 1998.

On April 22, 1998, Coregis filed the instant motion for summary judgment with respect to the Ehrgood Plaintiffs' claims for defense costs and indemnification. The Ehrgood Plaintiffs, in turn, filed a cross-motion for summary judgment with respect to Coregis's counterclaim for rescission on May 21, 1998.

## II. *Legal Standard*

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a

2. The parties dispute when Hoover asserted her claim against the Ehrgood Plaintiffs. The Ehrgood Plaintiffs allege that the May 9, 1997 letter represented Hoover's first claim. Coregis, however, argues that this allegation is controverted by the Ehrgood Plaintiffs's brief in response to its motion for summary judgment which states:

The first notice of a potential claim was made in a letter dated May 9, 1997, from Attorney Jannifer M. Weiss to Daniel G. Ehrgood, requesting information regarding his insurance coverage, but even in that letter no demand was made for damages. It was simply an inquiry. The notice that amounted to a claim being made was that of August 21, 1997, which included a draft copy of the Complaint. The claim was not actually implemented until the Complaint was filed on September 21, 1997.

(Ehrgood Pls.' Opp. Brief to Coregis's Motion for Summ.J. at 11–12.) To the extent that the Ehrgood Plaintiffs' positions regarding the import of the May 9, 1997 letter are inconsistent, the court considers the issue to be in dispute.

3. Although the parties state that the 1997–1998 policy was canceled on December 31, 1997, attached as an exhibit to the affidavit of John D. Enck is a letter to Coregis dated January 22, 1998, cancelling the policy effective January 1, 1998. (Enck Aff.Ex. A.)

verdict for the non-moving party. *See id.* at 249. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *See White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in their complaint; instead, they must "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Id.*

## III. *Discussion*

■■■ "Determination of the proper coverage of an insurance contract when the underlying facts are not in dispute is a question of law." *Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts and Youngs, P.C.,* 821 F.2d 216, 219 (3d Cir.1987). The inquiry into coverage is governed by traditional principles of insurance policy interpretation. *See Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 814 (3d Cir.1994). These principles have been summarized by the Supreme Court of Pennsylvania as follows:[4]

> The task of interpreting a contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy

provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983) (citations omitted). "A provision is ambiguous if reasonable persons considering the relevant language in the context of the entire policy could honestly differ as to its meaning." *Lucker,* 23 F.3d at 814. Courts should, however, be careful not to create ambiguities or rewrite the policies. *See id.* A court may only depart from the plain meaning of an unambiguous provision where adherence would be contrary to a clearly expressed public policy. *See Windrim v. Nationwide Ins. Co.,* 537 Pa. 129, 641 A.2d 1154, 1157 (1994).

■■■ Under Pennsylvania law, the insured bears the burden of proving that its claim falls within the policy's affirmative grant of coverage. *See Koppers Co., Inc. v. Aetna Cas. and Sur. Co.,* 98 F.3d 1440, 1446 (3d Cir.1996). The burden of proving the applicability of any exclusions or limitations on coverage, however, lies with the insurer, as those are affirmative defenses. *See id.* Moreover, the court must construe policy exclusions strictly against the insurer. *See First Pennsylvania Bank v. National Union Fire Ins. Co.,* 397 Pa.Super. 612, 580 A.2d 799, 802 (1990).

### A. *Coverage Under the 1997–1998 Policy*

In denying coverage in the case *sub judice,* Coregis relies on the following prior knowledge exclusion included in the 1997–1998 policy:

> This policy does not apply to:
>
> · · ·
>
> B.    any CLAIM arising out of any act, error, omission, or PERSONAL IN-

---

4. As both parties cite Pennsylvania law in their briefs, the court will apply Pennsylvania law to the instant motions.

JURY occurring prior to the effective date of this policy if any INSURED at the effective date of the policy knew or could foreseen that such act, error, omission, or PERSONAL INJURY might be expected to be the basis of a claim;

(Compl.Ex. C at 5.) Coregis argues that this exclusion precludes coverage for Hoover's legal malpractice action against the Ehrgood Plaintiffs. Coregis maintains that the language of the exclusion is unambiguous and enforceable against the Ehrgood Plaintiffs. It points out that Daniel Ehrgood was aware of certain facts which would have lead a reasonable attorney to believe that Hoover would file a claim against him.

In construing a nearly identical policy provision, another court recently concluded that "knew or reasonably could have foreseen" imparts a "reasonable attorney" standard. *See Mt. Airy Ins. Co. v. Thomas,* 954 F.Supp. 1073, 1079 (W.D.Pa.1997).[5] Under this test:

if an attorney knows of an act, error, incident or omission and knew or could have reasonably expected that it would result in a malpractice claim, then that incident would have to be disclosed when applying for coverage. If not disclosed, the incident would be excluded from coverage.

*Id.* at 1079–80. The *Thomas* court reasoned that a purely subjective standard "would defeat the ability of the insurance company to assess risk prior to issuing insurance." *Id.* at 1079.

■ The Third Circuit recently endorsed this approach in *Selko v. Home Insurance Co.* and adopted a two-step analysis: "First it must be shown that the insured knew of certain facts. Second, ... it must be determined that a reasonable lawyer in possession of such facts would have had a basis to believe that the insured had breached a professional duty." 139 F.3d 146, 151–52 (3d Cir.1998). The insurer bears the burden of proving that the insured knew the necessary underlying facts, but the insured cannot escape the effect of the exclusion by pleading ignorance of the ethical and fiduciary duties which all lawyers owe to their clients. *See id.* at 152.

■ The record in the instant case indicates that Daniel Ehrgood knew the facts underlying Hoover's malpractice claim at the time the Ehrgood Plaintiffs applied for the 1997–1998 policy and the policy's inception date. In his supplemental affidavit, Daniel Ehrgood states:

At all times in the [underlying case] up until the time the Preliminary Objections were filed in the Hoover case on October 16, 1996, I believed I had served the Writ of Summons and the Complaint in an appropriate manner.

(D. Ehrgood Supp.Aff. ¶ 1.) The Preliminary Objections alleged that "[a]t no time was either the original or reissued Writ of Summons ever served upon either of the [defendants in the underlying action]." (*Id.* Ex. J to Coregis's Ex. A ¶ 5.) Therein the defendants also asked the court to dismiss the underlying action with prejudice. (*Id.* ¶ 6.) Daniel Ehrgood did not attempt to controvert the defendants' allegations of improper service by filing a response or brief in opposition to the Preliminary Objections. (Coregis's Stmt. of Undisputed Mat. Facts ¶ 8.) Kenneth Jones, a Claims Specialist for Coregis, also attests that, during a conversation on August 27, 1997, Daniel Ehrgood stated that upon receipt of the Preliminary Objections on October 16, 1996, he knew that he had "no defense" to the objections. (Coregis's

---

5. The exclusion at issue in *Thomas* precluded coverage for:

any CLAIM arising out of any act, error, omission, or PERSONAL INJURY occurring prior to the effective date of this policy if an INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission, or PERSONAL INJURY might be expected to be the basis of a CLAIM or suit.

954 F.Supp. at 1075.

Br. in Support of Motion for Summ.J., Ex. C ¶ 7.)

Thus, on April 1, 1997, when the 1997–1998 policy incepted, a reasonable attorney in Daniel Ehrgood's shoes could have foreseen that the Preliminary Objections would be sustained and the underlying action dismissed with prejudice. The statute of limitations for wrongful death and survival actions in Pennsylvania is two years. *See* 42 Pa.Cons.Stat.Ann. § 5524(2). A reasonable attorney, therefore, could also have foreseen that he would be subject to a malpractice claim based on the errors and omissions that led to the dismissal of the underlying action.

The Ehrgood Plaintiffs advance four arguments why the court should nevertheless find coverage of Hoover's malpractice action: (1) they did not act in bad faith in failing to include that information in their renewal application; (2) Coregis was not prejudiced by their failure to provide notice of Hoover's claim until August 1997; (3) the 1995–1996 policy, taken with 1996–1997 and 1997–1998 renewal policies, operates to create one continuous policy from the years 1995 to 1998; and (4) even if the 1997–1998 policy precludes coverage for Daniel Ehrgood, his co-insureds, Thomas A. Ehrgood and John D. Enck, are exempt from the policy's exclusions and entitled to coverage as "innocent insureds."

■ The court finds each of these arguments unpersuasive. The prior knowledge exclusion at issue here does not include a bad faith requirement. Indeed, the Ehrgood Plaintiffs fail to point to any language indicating that the prior knowledge exclusion applies only to intentionally undisclosed claims. To the contrary, the plain language of the exclusion applies to any potential claim of which any insured "knew or could have reasonably foreseen."

Turning to the Ehrgood Plaintiffs' second argument, the court observes that the 1997–1998 policy is a "claims-made and reported" policy, as it states on the front page of the policy. (*See* Compl.Ex. C.)

The distinction between "claims-made" and "occurrence" policies was explained in *City of Harrisburg v. International Surplus Lines Ins. Co.* as follows:

> Both policies are intended to insure during a specified period of time against liability arising from the conduct of the insured. One type of policy, the occurrence policy, keys upon when that conduct occurs. If it occurs during the policy period, the insurer has a duty to indemnify and defend the insured regardless of when that claim against the insured is made. Conversely, the other type of policy, the claims-made policy, keys upon when the claim is asserted against the insured. If it is made against the insured during the policy period, the insurer has to perform under the contract regardless of when the conduct giving rise to the claim occurred.

596 F.Supp. 954, 960 (M.D.Pa.1984), *aff'd without opinion,* 770 F.2d 1067 (3d Cir. 1985). The court went to explain that whereas the notice provision in an occurrence policy allows the insurer time to investigate, defend, or settle the claim, the notice provision in a claims-made policy provides the insurer with a date certain on which its liability expires, allowing the insurer to "more accurately fix its reserves for future liabilities and compute premiums with greater certainty." *Id.* at 962. In light of the different purposes underlying the issuance of these two types of policies, the *City of Harrisburg* court concluded that a claims-made insurer need not show prejudice in order to enforce a notice provision. *Id.*

■ Similarly, this court finds that enforceability of the prior knowledge exclusion in a claims-made policy does not depend on whether the insurer was prejudiced by the insured's untimely notice of a potential claim. The prior knowledge exclusion allows the insurer to more accurately assess risks and calculate the premiums for its insureds. To require the insurer to show that it was prejudiced by the insured's belated disclosure of a fore-

seeable potential claim would not only vary the risks assumed by the insurer but would also re-write the claims-made policy. Such a requirement would also create the moral hazard that an insured may not fully disclose, or even take measures to apprise himself of, potential claims and instead take the risk that an insurer would be unable to show prejudice. The court declines to so radically alter the nature of the claims-made insurance policy.

■ Nor can the Ehrgood Plaintiffs successfully argue that the notice provided in August 1997 was timely because the 1997–1998 policy was a renewal policy. The first page of the policy contains a section entitled "Declarations" which clearly states as follows: "Policy Period: From April 01, 1997 to April 01, 1998." (Compl.Ex. C.) Both of the two earlier policies also similarly set out the policy period. (*Id.* Exs. A, B.) Each of the three policies issued to the Ehrgood Plaintiffs over the course of the years 1995 to 1998 has a different policy number. The premiums for each policy also varied. Moreover, the detailed information required by the policy renewal applications and claim information supplement forms clearly evinces an intent to create three separate policies, as opposed to one continuous policy.[6]

Finally, the court finds unpersuasive the Ehrgood Plaintiffs' contention that the prior knowledge exclusion permits coverage for "innocent insureds." To support this contention, they point to the following language contained in the 1997–1998 policy:

■ This policy does not apply to:

A. any CLAIM that results in a final adjudication against any INSURED that an INSURED has committed any criminal, dishonest, fraudulent, or malicious acts, errors, omissions, or PERSONAL INJURIES.

*This exclusion does not apply to any INSURED who is not so adjudged.*

(Compl.Ex. C at 3 (emphasis added).) The court notes, however, that Coregis is not seeking to enforce exclusion A of the policy, but rather, exclusion B, the prior knowledge exclusion. Whereas exclusion A purports to apply only to those insureds found guilty of criminal, dishonest, fraudulent, or malicious omissions or commissions, exclusion B pointedly does not include such exculpatory language. For that matter, neither do any of the remaining seven exclusions. The prior knowledge exclusion precludes coverage if "any insured" knew or could have reasonably foreseen that a claim would be filed. The court finds that the use of the phrase "any insured," coupled with the absence of the limiting language contained in exclusion A, clearly indicates an intent to preclude coverage if any insured has prior knowledge of a potential malpractice. *See Spezialetti v. Pacific Employers Ins. Co.*, 759 F.2d 1139, 1142 (3d Cir.1985) (exclusion based on acts of "any insured" unambiguously precluded coverage for innocent co-insureds). Thus, the court finds that the prior knowledge exclusion contained in the 1997–1998 policy precludes coverage to the Ehrgood Plaintiffs for Hoover's malpractice claim. Accordingly, the court will grant Coregis's motion for summary judgment with respect to this claim.

### B. *Coverage under the 1996–1997 Policy*

Even if the 1997–1998 policy precludes coverage, the Ehrgood Plaintiffs argue

---

**6.** The Ehrgood Plaintiffs also attempt to argue that in completing the policy renewal application, John D. Enck intended to create a separate contract for each insured. The plain language of the renewal application, however, belies this contention: the Ehrgood Plaintiffs submitted a single application naming the insureds, paid a single premium, and received a single policy. By claiming that the renewal application filed by one insured created separate insurance policies for each insured, the Ehrgood Plaintiffs ask the court to relieve them of their duty to audit the firm's files prior to applying for renewal, to discourage forthrightness among other similarly-situated renewal applicants, and to ignore the basic tenets of partnership law. The court declines to do so.

that the Hoover claim may nevertheless be covered under the 1996–1997 policy. In support, they rely on the policy's "extended reporting period" option which allows an insured whose policy is canceled or not renewed to extend the time in which to report claims. The option:

applies only to CLAIMS covered by this policy which are first made against any INSURED and reported to the Company during the Extended Reporting Period. Coverage for CLAIMS first made and reported during the Extended Reporting Period applies only to CLAIMS for acts, errors, or omissions, or PERSONAL INJURIES which took place prior to the end of the POLICY PERIOD and after the RETROACTIVE DATE, if any.

(Compl.Ex. B "Conditions" IV.) Given the cancellation of the 1997–1998 policy, the Ehrgood Plaintiffs argue that they can elect the extended reporting period under the 1996–1997 policy and obtain coverage of the Hoover malpractice claim.

■ The obvious problem with this argument, however, is that the Ehrgood Plaintiffs did not cancel or non-renew the 1996–1997 policy; indeed, they renewed the 1996–1997 policy as a 1997–1998 policy. The 1996–1997 policy clearly states that the extended reporting period is only available upon cancellation or non-renewable. Furthermore, the named insured must provide written notice of the intention to purchase the extended reporting period within sixty days of the expiration of the policy period. Given that the Ehrgood Plaintiffs renewed the 1996–1997 policy, the extended reporting period option is unavailable to them.[7]

■ The Ehrgood Plaintiffs contend, in the alternative, that renewal of the 1996–1997 policy, in effect, operates as an ex-

tended reporting period under that policy. They argue that because an insured who cancels or does not renew a policy can extend the reporting period, surely an insured who does renew must be given the same extension. They maintain that denial of the extending reporting period violates their reasonable expectations as well as public policy.

■ At first blush, this argument has some intuitive appeal. It seems only logical that an insured who renews receive greater, or at least not less, protection than one who cancels or fails to renew. This approach, however, ignores the nature of the policy at issue. Each of the three policies issued by Coregis is a claims-made policy, which the court previously distinguished from an occurrence policy. *See* section III.A., *supra.* Whereas an occurrence policy insures against the occurrence itself such that coverage is provided regardless of when the claim is asserted, a claims-made policy insures against the claim itself, regardless of when the event occurred, subject to relevant policy language. *See American Cas. Co. v. Continisio,* 17 F.3d 62, 68 (3d Cir.1994). "In an occurrence policy, notice provisions are included to help the insurer investigate, defend, and settle claims; they do not define coverage." *Id.* By contrast, the notice, or reporting period, in a claims made policy defines coverage: "if the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches." *Gulf Ins. Co. v. Dolan, Fertig and Curtis,* 433 So.2d 512, 515 (Fla.1983). "Thus, an extension of the notice period in a 'claims-made' policy constitutes an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that ex-

7. The Ehrgood Plaintiffs also maintain that they can purchase an extended reporting period under the 1997–1998 policy. Even if this purchase were to be timely under that policy, the court finds that the Hoover claim would not be covered. As discussed in section III.

A., *supra,* the prior knowledge exclusion precludes coverage under the 1997–1998 policy. The extended reporting period, therefore, cannot provide coverage otherwise unavailable under the policy.

pressly insured against in the policy." *Zuckerman v. National Union Fire Ins. Co.,* 100 N.J. 304, 495 A.2d 395, 406 (1985).

Coregis's failure to make the extended reporting period option available to policy renewals neither violates public policy nor the Ehrgood Plaintiffs' reasonable expectations. An optional extended reporting period for those who cancel or fail to renew a policy protects those insureds against the gaps in coverage that can result from switching to an occurrence policy or to another claims-made policy. As explained above, occurrence policies do not cover acts that occur before the policy period. Thus, an insured who shifts from claims-made to occurrence coverage loses coverage for those claims based on acts that happened during the claims-made policy period, thereby creating a gap in his coverage while his premium obligations remain continuous. This insured can only protect himself against the possibility of such claims by extending the period in which to report claims arising out of the claims-made policy period. An insured who changes claims-made policy carriers may also face a similar problem, in the event that the subsequent carrier places a retroactive date that limits coverage for prior acts.

By contrast, insureds who renew their policies face no such problem. The Coregis policies do not contain a retroactive date.[8] Thus, the 1996–1997 policy offers unlimited prior acts coverage for the claims that were unforeseeable at the time the policy incepted. Assuming *arguendo* that Pennsylvania has a public policy which requires insurers to offer protection against gaps in coverage to insureds changing carriers or policy types, such public policy is simply inapplicable to insureds who remain with the same carrier and the same type of insurance policy. Furthermore, the Ehrgood Plaintiffs' 1996–1997 policy provided them sixty days after the end of the policy period in which to report any claims or potential claims, thereby protecting them against "eleventh-hour" claims filed toward the end of the policy period. They point to nothing in the insurance policy or in the course of their dealings with Coregis which would have lead them to believe they had a longer period of time. Thus, their failure to disclose a foreseeable claim[9] within the prescribed time limits does not frustrate any of their reasonable expectations. The court finds, therefore, that coverage of the Hoover claim is precluded under the 1996–1997 policy. The court will grant summary judgment in favor of Coregis with respect to this claim.

### C. Rescission of the 1997–1998 Policy

The Ehrgood Plaintiffs' cross-motion seeks summary judgment in their favor on Coregis's counterclaim for rescission of the 1997–1998 policy. In its responsive brief, however, Coregis states that it intends to withdraw the counterclaim if the court finds the prior knowledge exclusion enforceable. (Coregis's Br. in Resp. to Cross–Motion for Summary J. at 14.) In light of the court's conclusion that coverage is precluded under the terms of the 1996–1997 and 1997–1998 policies and in the interests of judicial economy, the court will provide Coregis an opportunity to withdraw its rescission cross-claim. The court will defer disposition of the Ehrgood Plaintiffs' cross-motion at this time.

---

**8.** The Ehrgood Plaintiffs contend that the 1996–1997 and 1997–1998 policies are ambiguous with respect to a retroactive date, as "retroactive date" is defined in the policies but such date is nowhere identified. Coregis, however, points out that the policies state that the definition of retroactive date applies only if such a date is identified in the Declarations section of the policies. Neither policy, identifies a retroactive date. Notwithstanding their disagreement regarding the ambiguity of the retroactive dates, the parties agree as to the effects: the policies afford the Ehrgood Plaintiffs prior acts coverage, subject, of course, to the prior knowledge exclusion.

**9.** The court previously concluded that the Hoover malpractice claim was foreseeable. *See* section III.A., *supra.*

## IV. *Conclusion*

In accordance with the foregoing discussion, the court concludes that the prior knowledge exclusion contained in the 1997–1998 policy precludes coverage of Hoover's malpractice claim against the Ehrgood Plaintiffs. The court also concludes that the Ehrgood Plaintiffs' failure to provide timely notice precludes coverage under the 1996–1997 policy. The court will grant summary judgment in favor of Coregis with respect to the Ehrgood Plaintiffs' claims for coverage under the 1996–1997 and the 1997–1998 policies. The court will allow Coregis ten days to voluntarily dismiss its cross-claim for rescission of the 1997–1998 policy and will defer disposition of the Ehrgood Plaintiffs' cross-motion for summary judgment.