**CAROSELLA & FERRY,
P.C., Plaintiff,**

v.

**TIG INSURANCE COMPANY,
Defendant.**

No. CIV. A. 00–2344.

United States District Court,
E.D. Pennsylvania.

Feb. 20, 2001.

Joseph A. Ferry, Carosella & Ferry, PC, West Chester, PA, for Plaintiff.

Lawrence J. Bistany, Kellyann E. Johnson, White and Williams, Philadelphia, PA, for Defendant.

### Memorandum and Order

YOHN, District Judge.

Gail and John Bradley ("the Bradleys") filed suit against plaintiff Carosella & Ferry, P.C. ("Carosella") for malpractice. Carosella—having purchased a malpractice insurance policy from defendant TIG Insurance Company ("TIG")—filed for coverage on the Bradley suit. TIG declined coverage, and Carosella subsequently sued TIG for breach of contract and bad-faith conduct under 42 Pa.C.S.A. § 8371.

Before the court is TIG's motion for summary judgment on the breach of contract issue. First, TIG contends that if the insured had a reasonable basis to foresee that a malpractice claim would be made against the insured for the provision of services rendered prior to the start of the policy period, the policy does not cover claims arising from the provision of those services. Second, TIG contends that the policy does not cover claims made prior to the start of the policy period.

Several months prior to the start of the policy period, the Bradleys' attorney wrote Carosella a letter stating that the Bradleys planned to sue Carosella for malpractice. The letter provided a reasonable basis to foresee that the Bradleys would make a claim against Carosella and in any case, the letter is itself a claim made prior to the start of the policy period. Accordingly, TIG's decision to decline coverage does not constitute a breach of the policy.

### I. Facts

The facts are undisputed. On October 29, 1998, Carosella received a letter from the Bradleys' lawyer. Def.'s Mem. at Ex. A; Ex B (request and response to Admission # 1). Carosella had represented the Bradleys in 1997. Pl.'s Mem. at 6. The letter is entitled "Re: Bradley v. Carosella & Ferry, P.C." and in relevant part states:

"On November 3, 1997, on behalf of the Bradleys and their corporation, you filed a petition to open judgment. Unfortunately, that petition did not assert certain facial defects in the confessed judgments, nor did your petition seek to strike the confessed judgments. . . .

"You are hereby notified of the intention of Mr. and Mrs. Bradley to file an action against you and your law firm for professional malpractice consisting of your failure timely to litigate the issues raised in our subsequent Motion to Strike Confessed Judgment. If you have not already done so, please notify your errors and omissions carrier at once. . . .

"We will presently pursue a direct appeal and/or a motion [seeking reconsideration]. In any event, the Bradleys continue to sustain damage consisting, at a minimum, of the expense of this extraordinary litigation. Please ask your carrier to contact me at once."

Def.'s Mem. at Ex. A. On November 4, 1998, Carosella wrote back and stated that the Bradleys did not have any grounds for their malpractice claim, stated that Carosella would not contact its errors and omissions carrier, and threatened to file suit against the Bradleys and their new lawyers if the threatened malpractice suit were filed. Def.'s Mem. at Ex. C.

On August 17, 1999, the Bradleys filed a malpractice suit against Carosella in the Court of Common Pleas of Chester County. Pl.'s Mem. at 6. Soon after, Carosella was served notice of the suit, and in turn, Carosella notified its liability carrier, TIG, of the complaint and requested that TIG provide a defense. *Id.* Carosella had purchased a TIG malpractice insurance policy

for the period extending from March 1, 1999 through March 1, 2000.

TIG investigated Carosella's claim and determined that the policy purchased by Carosella did not cover the Bradleys' suit. Def.'s Mem. at 6. On October 13, 1999, TIG issued its decision to Carosella. *Id.* Subsequently, Carosella represented itself and filed a motion for judgment on the pleadings. Pl.'s Mem. at 6. The motion was granted. *Id.*

Carosella sued TIG in state court for breach of contract and bad-faith conduct in violation of 42 Pa.C.S.A. § 8371, and TIG removed the action to the Eastern District of Pennsylvania. TIG moved for summary judgment on the breach of contract issue, while Carosella moved for summary judgment on the bad-faith conduct issue. However, both parties have requested that the court resolve the breach of contract allegation first. Letter from Attorneys for Pl. and Def. to the Court (Sept. 21, 2000). Accordingly, this opinion addresses only the breach of contract question.

## II. Standard of Review

Disposition by summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As explained by the Supreme Court, a summary judgment determination is a "threshold inquiry [that determines] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, "a motion for sum-

mary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987). The court must resolve all reasonable doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir.1990).

## III. Discussions

TIG argues that the Bradleys' claim is not covered under the policy for two independent reasons. First, TIG argues that with respect to claims based on services rendered prior to the policy period, the policy only covers claims if the insured did not have a reasonable basis to foresee that a claim would be made. Second, TIG argues that the policy only covers claims made during the policy period and that the Bradleys' claim was made prior to that period. Accordingly, TIG concludes that it did not breach the policy. However, Carosella argues that the Bradleys' claim was made during the policy period and that there was no reasonable basis to foresee the claim. After determining which state's contract law binds judgment in this case, the parties' arguments are discussed.

### 1. Choice of Law

Federal jurisdiction over this case is based on diversity. *See* 28 U.S.C. § 1332. Where jurisdiction is based on diversity, the district court must apply the choice of law rules of the forum state. *See St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 n. 3 (3d Cir.1991) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85

L.Ed. 1477 (1941)). Under Pennsylvania law, "an insurance contract is governed by the law of the state in which the contract was made[,]" and the contract is made at the place of delivery. *Centennial Ins. Co. v. Meritor Savings Bank,* No. 91–6346, 1992 WL 164906 (E.D.Pa. July 6, 1992). Furthermore, in the absence of proof of place of delivery, the residence of the insured is presumed to be the place of delivery. *See id.* Here, the malpractice insurance contract lists Carosella's address in Pennsylvania. Even if this in itself did not show Pennsylvania as the place of delivery, given that the record does not show otherwise, it would be assumed that Pennsylvania was the place of delivery. Accordingly, Pennsylvania law governs, and the parties do not suggest otherwise.

The Pennsylvania Supreme Court has stated that "[t]he task of interpreting a contract is generally performed by a court rather than by a jury.... Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to the language." *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983). Interpretations of the relevant policy provisions, as necessary, are included in the analysis of TIG's arguments below.

## 2. Reasonable Foreseeability of the Bradleys' Claim

The Bradleys filed their malpractice complaint in state court and had effected service on Carosella within the policy period. Assuming that filing or service constitutes a claim under the policy, TIG argues that it is not obligated to cover the Bradleys' claim because Carosella, prior to the policy period, had a reasonable basis to

foresee that the Bradleys would make a claim. According to the policy's coverage clause, TIG must provide coverage for

"[c]laims first made against the **Insured** and reported in writing to the Company during the **Policy Period** ... by reason of any act, error, omission or Personal Injury arising from **Professional Services** rendered or which should have been rendered by the Insured ... provided that such act, error, omission, or **Personal Injury** occurs:

A. during the **Policy Period**; or

B. prior to the **Policy Period,** provided that prior to the **Policy Period**:

1. the Insured did not notify any insurer under any prior policy or policies of such act, error, omission or **Personal Injury**; and

2. neither the **Insured,** nor any partner, shareholder, or the **Insured's** management committee knew or should have known that a wrongful act, error or omission or **Personal Injury** had occurred or had a reasonable basis to foresee that a **Claim** would be made against an **Insured;** and

3. there is no other policy or policies which provide insurance for such **Claim**."

Def.'s Mem. at Ex. D. (hereinafter "Policy") at 1 (emphasis in original). TIG does not argue that Carosella notified any other insurer of the Bradleys' suit or that Carosella has some other policy to cover the Bradleys' suit. Furthermore, TIG does not contest Carosella's claim that it committed no wrongful act, error, or omission in its representation of the Bradleys. Pl.'s Mem. at 1, ¶ 4. Rather, TIG's argument focuses narrowly on whether Carosella had a reasonable basis to foresee that the Bradleys would make a claim. Accordingly, the court focuses on the following portion of the coverage clause: "neither the

Insured, nor any partner, shareholder, or the Insured's management committee .... had a reasonable basis to foresee that a Claim would be made against an Insured." Policy at 1 (emphasis omitted).

Given the absence of applicable Pennsylvania precedent, the court must construe the policy provisions without direct guidance. Both TIG and Carosella agree that the "reasonable basis to foresee" provision refers to both the insured's subjective beliefs and the beliefs of a reasonable person in the insured's place. Def.'s Mem. 9–10; Pl.'s Mem. at 9. The phrasing of the provision supports the parties' view. The provision refers to the insured's "basis to foresee" that a claim would be made. "Basis" can only refer to the insured's knowledge. However, the provision modifies the phrase with the term "reasonable." Consequently, the provision refers to what a reasonable attorney would foresee given the insured's knowledge. Numerous courts have endorsed this reading of similarly phrased malpractice-insurance policy language.[1]

■ Applying this standard of foreseeability to the facts of this case, it is plain the Bradleys' claim is not covered by the policy. The Bradleys explicitly threatened suit through the October 29, 1998 letter. Moreover, the letter explicitly tells Carosella to inform its malpractice carrier of the intended suit. It is crystal clear that the letter provides Carosella and any reasonable attorney with a basis to foresee that the Bradleys would file a claim against Carosella, thus meeting the subjective and objective standards. *See Culver v. Continental Ins. Co.*, 1 F.Supp.2d 545, 547 (D.Md.1998) (holding that letter threatening suit provides reasonable basis to foresee suit), *aff'd*, 11 Fed.Appx. 42, 1999 WL 503527 (4th Cir. July 16, 1999). Carosella had a reasonable basis to foresee the Bradleys' claim. Therefore, TIG is not obligated to cover Carosella's claim, and TIG has not breached its contractual duty to Carosella.

Undeterred by the obvious, Carosella argues that no reasonable attorney in Carosella's place would have foreseen the Bradleys' claim because the suit threatened in the letter was utterly without merit and because Carosella knew that it had ably represented the Bradleys. Pl.'s Mem. at 15. It is certainly arguable that the suit's lack of merit would not notify a reasonable attorney of any wrongful act he or she had committed. However, the relevant provision does not deal with the question of whether the insured knew or should have known that it had committed a wrongful act. Rather, the relevant question is whether there was a reasonable basis to foresee that a claim would be made. Carosella appears to confuse the two questions.

### 3. The Timing of the Bradleys' Claim

The policy states that TIG is legally obligated to provide coverage for "**Claims** first made against the **Insured** and reported in writing to the Company during the **Policy Period** . . . ." Policy at 1. The policy does not extend coverage to claims made against the insured prior to the policy period. *See id.* Furthermore, a "Claim" is defined to mean "a *demand received by the Insured for money* or services, including the service of suit or the institution of alternative dispute resolution

---

1. *See, e.g., Selko v. Home Insurance Company,* 139 F.3d 146, 150 (3d Cir.1998); *Murphy v. Coregis Ins. Co.,* No. 98–5065, 1999 WL 627910 at *4 (E.D.Pa. Aug.17, 1999); *Coregis Ins. Co. v. Wheeler,* 24 F.Supp.2d 475, 479 (E.D.Pa.1998); *Ehrgood v. Coregis Ins. Co.,* 59 F.Supp.2d 438, 442–43 (M.D.Pa.1998); *Mt. Airy Ins. Co. v. Thomas,* 954 F.Supp. 1073, 1075 (W.D.Pa.1997).

or arbitration proceeding against the **Insured** . . . ." Policy at 6 (italicization added).

TIG correctly argues that the October 29, 1998 letter constitutes a claim under the policy. Def.'s Mem. at 13. Carosella's argument that the claim does not ask for money or services is flatly contradicted by the letter itself. Pl.'s Mem. at 14.[2] The letter clearly states that the Bradleys intend to file a malpractice action against Carosella. The letter also asks Carosella to contact its malpractice insurance carrier and to have the carrier contact the Bradleys' attorney. Additionally, the letter states that the Bradleys suffered damages amounting, at a minimum, to the cost of their attorney's litigation fees. Furthermore, Carosella admits to receiving the letter. It is plain that this letter is a "claim" under the terms of the policy, that it constitutes a demand for money, and that the letter was received by Carosella prior to the March 1, 1999, the start of the policy period. Accordingly, the policy does not obligate TIG to extend coverage to Carosella based on the Bradleys' claim. Consequently, in not extending coverage over the claim, TIG did not breach its contract with Carosella.

## IV. Conclusion

Months before the Bradleys commenced their malpractice suit, the Bradleys' attorney informed Carosella that the Bradleys planned to file suit. The letter, received by Carosella prior to the start of the malpractice insurance policy's coverage period, gave Carosella and any reasonable attorney a reasonable basis to foresee the Bradleys' claim. Therefore, TIG, under the terms of the malpractice policy, did not have an obligation to cover the claim. Moreover, the letter from the Bradleys'

attorney threatening suit constitutes a claim under the policy definitions, and it was made prior to the policy period. Therefore, TIG, under the terms of the malpractice policy, again did not have an obligation to cover the Bradleys' claim. Given TIG's lack of obligation to cover the Bradleys' suit, TIG's decision to decline coverage over that suit is not a basis for breach of contract.

---

2. Carosella's claim that TIG admits in its memorandum of law that the letter is not a claim is a gross mischaracterization of the TIG memorandum.