# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, AMERICAN GUARANTEE and LIABILITY INSURANCE COMPANY, | § § § § § § § § § § § § § § § § § § | No. 135, 2023 Court Below: Superior Court of the State of Delaware C.A. No. N19C-05-108 |
| Plaintiffs Below, Appellants, | | |
| v. | | |
| SYNGENTA CROP PROTECTION LLC, | | |
| Defendant Below, Appellee. | | |

Submitted: December 6, 2023
Decided: February 26, 2024

Before **SEITZ**, Chief Justice; **TRAYNOR** and **LEGROW**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

John D. Balaguer, Esquire (*argued*), Lindsey E. Imbrogno, Esquire, BALAGUER MILEWSKI & IMBROGNO, Wilmington, Delaware; Michael M. Marick, Esquire, Timothy H. Wright, Esquire, SKARZYNSKI MARICK & BLACK LLP, *for Appellants Zurich American Insurance Company, American Guarantee and Liability Insurance Company*.

Stephen E. Jenkins, Esquire, Catherine A. Gaul, Esquire, ASHBY & GEDDES, Wilmington, Delaware; Dorthea W. Regal, Esquire, Joshua L. Blosveren, Esquire (*argued*), Miriam J. Manber, Esquire, HOGUET NEWMAN REGAL & KENNEY, LLP, New York, New York, *for Appellee Syngenta Crop Protection LLC*.

**TRAYNOR**, Justice:

Under "claims made" liability insurance policies, whether a communication to the insured constitutes a "claim" or a "claim for damages" is consequential to the identification of the policy applicable to the purported claim. It is not unusual for an insurer to deny coverage on the grounds that a communication does not constitute a claim made within the relevant policy period. In this case, we encounter the opposite. The insurers here denied coverage, contending that a letter from a lawyer to the insured threatening litigation on behalf of unidentified clients *before* the inception of the insurers' coverage was a "claim for damages." Because the letter was not received by the insured "during the policy period," there is, according to the insurers, no coverage, and they sought a declaratory judgment from the Superior Court to that effect.

The Superior Court disagreed with the insurers and held that the letter, though it threatened future litigation, was too "unclear [and] amorphous . . . to constitute a claim for damages."[1] The litigation threatened in the letter did ensue but after the inception of the insureds' policies and during the periods of coverage at issue. The court thus entered summary judgment in favor of the insured. For the reasons that

---

[1] *Zurich Am. Ins. Co. v. Syngenta Crop Prot., LLC*, 2020 WL 5237318, at *8 (Del. Super. Ct. Aug. 3, 2020) ("Op.").

2

follow, we agree with the Superior Court's reasoning and judgment and therefore affirm.

I

A

Appellants Zurich American Insurance Company and American Guarantee and Liability Company (collectively, "Zurich") are New York corporations offering insurance services in Delaware.[2] Appellee Syngenta Crop Protection, LLC ("Syngenta") is a Delaware LLC indirectly wholly owned by Syngenta Crop Protection AG, a global agrichemical company.[3]

Zurich issued three primary commercial general liability policies to Syngenta Crop Protection AG with Syngenta as an additional named insured covering periods from January 1, 2017 to January 1, 2020 (collectively, the "Primary Policies").[4] Each Primary Policy provided a $5 million aggregate limit of liability in excess of a self-insured retention of $1 million.[5] Zurich also issued Syngenta three Umbrella Policies, effective for the January 1, 2017 to January 1, 2020 policy periods.[6] Under the Umbrella Policies, Zurich agreed to pay covered damages in excess of the total

---

[2] App. to Answering Br. at B439–440.

[3] *Id.* at B405, B440.

[4] *Id.* at B441; App. to Opening Br. at A625, A627. Policy number GLO 0144423 00 was effective January 1, 2017 to January 1, 2018; policy number GLO 0144423 01 was effective January 1, 2018 to January 1, 2019; and policy number GLO 0144423 02 effective January 1, 2019 to January 1, 2020.

[5] App. to Opening Br. at A631, A677.

[6] Opening Br. at 16; App. to Opening Br. at A771.

limits of the applicable Primary Policy up to $19 million.[7]  We refer to the Primary and Umbrella Policies collectively as the "Zurich Policies."[8]

Under the Zurich Policies, Zurich is required to pay "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which th[e] insurance applies"[9] and Zurich has the "the right and duty to defend" Syngenta against any suit seeking such damages.[10]  The policies treat all claims of bodily injury resulting from a "common cause or condition" as one occurrence.[11]  But the Zurich Policies are "claims-made" policies, that is, they apply only to "claim[s] for damages . . . *first made* against [Syngenta] . . . during the policy period[.]"[12]  The Zurich Policies do not define the term "claim for damages."

B

Syngenta and its predecessor companies manufactured and sold paraquat, a chemical compound used in herbicides that has been linked to the onset of Parkinson's disease.[13]  Syngenta has been named as a defendant in several lawsuits

---

[7] App. to Opening Br. at A772.

[8] The relevant language is identical in each policy.  *See* Opening Br. at 16.

[9] App. to Opening Br. at A730.

[10] *Id.*

[11] *Id.* at A767.

[12] *Id.* at A730 (emphasis added).  *See First Solar, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 274 A.3d 1009 (Del. 2022) (citing *United Westlabs, Inc. v. Greenwich Ins. Co.*, 2011 WL 2623932, at *3 (Del. Super. June 13, 2011), *aff'd*, 38 A.3d 1255 (Del. 2012)).

[13] *See* Op. at *2.

seeking recovery for alleged bodily injuries, sickness, or disease caused by paraquat exposure.[14]

On January 18, 2016, Syngenta received a 20-page letter from Stephen M. Tillery, a named partner in Korein Tillery LLC, a plaintiffs' toxic tort firm (the "Tillery Letter").[15] The first paragraph of the letter states:

> Since I have heard nothing from any outside counsel for Syngenta concerning the topic of our recent discussion[,] I have decided to write to explain this topic a bit further. Our firm has been retained by numerous victims of Parkinson's disease in connection with claims they and their spouses have against Syngenta for personal injuries and related damages. Virtually all of these men are farmers or pesticide applicators who have a positive history of exposure to Paraquat.[16]

Sandwiched between this opening and the letter's concluding paragraph sit sixteen pages of technical information concerning paraquat's composition, application, and purported neurotoxicity. The letter culminates in an allegation that Syngenta "failed to warn . . . [of the] chemicals."[17] It concludes with the following:

> We believe that when all of this scientific information we have learned is publicly disseminated there will likely be a huge number of "copycat" lawsuits causing Syngenta to incur enormous defense costs all over the country and exposure to liability far above its insurance policy limits. As a simple example, if just 2,000 new Parkinson's cases are filed each year (we expect far more) and defense costs of $500,000 per case are incurred, the financial exposure to Syngenta will equal one billion annually before payment of compensatory or punitive losses. As I indicated in our call, we believe the prudent approach is to pursue a few

---

[14] The earliest-filed lawsuit, not at issue in this appeal, was filed was filed on May 30, 2008 in the Superior Court of Los Angeles, California (the "Shenkel Lawsuit"). *See* Op. at *2.
[15] App. to Opening Br. at A140.
[16] *Id.*
[17] *Id.* at A158.

5

"bellwether" cases. These trials will allow Syngenta and my firm to avoid the enormous time and expense of pursuing cases all over the country while we determine legally whether the chemical is responsible for the onset of Parkinson's disease. While those case are being pursued, I believe we can execute tolling agreements for the numerous (now over 200) remaining cases. Please let me hear from you regarding these matters at your earlier convenience.[18]

Tillery sent a second letter one week later to "notif[y] Syngenta . . . of the imminent initiation of litigation concerning Syngenta's paraquat products and [to] request[] that Syngenta take all steps necessary to preserve any and all documents . . . that could be discoverable in litigation concerning its subject matter[.]"[19] The second letter, like the first, did not name any plaintiffs.[20]

Following receipt of the letters, Syngenta engaged Kirkland & Ellis LLP ("Kirkland") who met with Tillery in February 2016 and requested information regarding the claimants and their injuries.[21] Tillery declined to provide that information.[22] In an email composed on the day of this meeting and entitled "Summary of Meeting with Tillery," Kirkland described Tillery's reluctance to provide any specific information—noting that "[w]e repeatedly pressed Tillery for

---

[18] *Id.* at A158–59.

[19] *Id.* at A160.

[20] *Id.* at A160–62.

[21] *Id.* at A169. Below, Zurich argued that the second letter, like the first, constituted a claim for damages on its face. *See* Super. Ct. Docket Index. No. 29, Opening Br. at 7, 20. ("Super. Ct. D.I. __"). The Superior Court determined that the second letter was a "request . . . for preservation of materials that *could* be discoverable in litigation that has not yet been initiated. Thus, it [wa]s a litigation hold letter, and not a claim for damages." Op. at *9 (emphasis in original). Zurich has not challenged that holding on appeal.

[22] App. to Opening Br. at A169.; *see also id.* at A180–81.

details about his plaintiffs' claims--who they are, how they were exposed, when they were diagnosed, their age, etc. Tillery responded mostly with generalities[.]"[23] Kirkland also noted that, at the meeting, Tillery stated that he had "200-300" paraquat clients that were mostly "grain farmers or applicators" local to the Madison or St. Clair areas and were diagnosed with Parkinson's in their "late 50s or early 60s,"[24] but Tillery refused to provide any specific information on any plaintiffs. Tillery also declined to name any experts he had retained.[25] Kirkland noted that Tillery was "not in [a] big hurry to file."[26] This led Syngenta's Global Head of Litigation to conclude that Tillery did not represent actual claimants and would not "file any lawsuit against Syngenta at that time."[27]

In April 2016 Kirkland emailed Tillery to "better understand[]" Tillery's proposal and "asked for medical records for the six plaintiffs [Tillery] described as the bellwether plaintiffs," as well as copies of any documents suggesting that Syngenta had knowledge of a potential connection between paraquat and Parkinson's disease.[28] Tillery did not respond to Kirkland's requests in 2016.[29]

---

[23] *Id.* at A180.
[24] *Id.*
[25] *Id.* at A182.
[26] *Id.*
[27] *Id.* at A169–70.
[28] App. to Answering Br. at B2.
[29] App. to Opening Br. at A170–71. App. to Answering Br. at B640–41.

Tillery testified at his deposition in this action that by the end of 2016, he had not provided Kirkland or Syngenta with the names of, any specific identifying information regarding, or medical documentation for, any of his clients.[30] He also testified that, by the end of 2016, he had not retained any experts, and had not made any demand for money to Kirkland or Syngenta on behalf of any client.[31]

In September 2017, two plaintiffs—a farmer and his wife—filed suit against Syngenta in an Illinois circuit court alleging that the plaintiffs suffered injuries related to paraquat exposure (the "Hoffman Action").[32] The Hoffman Action, filed by Sprague & Urban Law Office,[33] was followed by two additional actions in Illinois and ten in the Superior Court of California (collectively, the "Paraquat Actions") filed between September 2017 and April 2019.[34] The Tillery firm was not listed as counsel on the Hoffman Action, but was named as counsel for the plaintiffs in the later Paraquat Actions.[35]

The plaintiffs in the Paraquat Actions are farmers, farm hands, landowners and/or professional sprayers who allege that they suffer from Parkinson's disease caused by exposure to paraquat manufactured, distributed, or sold by Syngenta and

---

[30] App. to Answering Br. at B639–41.
[31] *Id.*
[32] App. to Opening Br. at A222. An amended complaint was filed on October 6, 2017. *See id.* at A278.
[33] App. to Opening Br. at A276, A556.
[34] Answering Br. at 12–13; App. to Answering Br. at B307.
[35] *See* Super. Ct. D.I. 24, Exs. C–P.

its predecessors.[36] The Paraquat Actions assert claims for negligence, public nuisance, strict product liability, and breach of implied warranty of merchantability.[37] The plaintiffs in the Paraquat Actions seek monetary damages for lost income and medical treatment, pain, mental anguish, and disability.[38]

In November 2017, Syngenta notified Zurich of the Hoffman Action.[39] That notice did not mention the Tillery Letter.[40] In a June 22, 2018 letter Zurich agreed to defend Syngenta in connection with the Hoffman Action once Syngenta had exhausted its $1-million self-insured retention.[41] That same day, Zurich requested "the total defense costs incurred [and] . . . a copy of the 2018 defense budget[.]"[42] In response, Syngenta "confirmed the total legal defense expenditure incurred from first receipt of a notice of potential litigation from the Korein Tillery law firm in January 2016 is approx. $3.43 Million" (the "Kirkland Fees").[43] This, it would appear, was Syngenta's first disclosure of the Tillery Letter to Zurich.[44]

Three months later, on September 14, 2018, Syngenta notified Zurich that it had exhausted its self-insured retention policy and requested that Zurich pay its

---

[36] Super. Ct. D.I. 168, ¶ 25.
[37] *Id.*, ¶ 26.
[38] *Id.*
[39] App. to Answering Br. at B22–23.
[40] *Id.*
[41] *Id.* at B29–35.
[42] *Id.* at B24.
[43] *Id.*
[44] Answering Br. at 54 (citing B24).

defense costs.[45] Zurich requested proof that Syngenta had exhausted its $1 million limit before agreeing on January 15, 2019 to defend Syngenta in the Hoffman Action subject to a reservation of rights.[46] Five days before Zurich agreed to defend and indemnify Syngenta for the Paraquat Actions, Syngenta provided Zurich with notice of two additional Paraquat Actions filed by the Tillery firm against Syngenta.[47]

On January 28, 2019—six months after learning that the Tillery firm had given notice of potential litigation in January 2016—Zurich requested a copy of the Tillery Letter and any subsequent correspondence with Tillery related to the Paraquat Actions.[48] In April 2019 Syngenta provided notice of ten additional Paraquat Actions filed by Tillery and provided the Tillery Letter to Zurich.[49]

## C

Two weeks after receiving a copy of the Tillery Letter, Zurich filed suit in the Superior Court, requesting a declaratory judgment that: (1) Zurich owed no duty to defend or to indemnify Syngenta in the Paraquat Actions under the Zurich Policies because the actions were based on claims made against Syngenta in January 2016, that is, in the Tillery Letter before the inception of the Zurich Policies and (2) under 18 *Del. C.* § 2711, Syngenta was not entitled to coverage for the Paraquat Actions

---

[45] App. to Opening Br. at B42.
[46] *Id.* at B74–75, B97.
[47] *Id.* at B94–95.
[48] App. to Opening Br. at A866.
[49] *Id.* at A868–69; App. to Answering Br. at B307.

because of its "misrepresentations, omissions, concealment of facts, and incorrect statements in its applications for the Zurich Policies . . ."[50] related to the Shenkel Lawsuit, Hoffman Action, and Tillery Letter.[51] In its answer and counterclaim against Zurich, Syngenta asserted a breach of contract claim and requested a declaratory judgment that Zurich had a duty to defend and indemnify Syngenta in the Paraquat Actions.

D

Shortly after filing suit, Zurich moved to compel discovery, seeking disclosure of privileged communications between Syngenta and its lawyers. Zurich contended that the communications were subject to disclosure under the "at issue" exception to the attorney-client privilege. The exception applied, according to Zurich, because "Syngenta ha[d] injected numerous issues into [the] litigation regarding its understanding of the Tillery Letter and its exposure to potential Paraquat claims, so fairness require[d] an examination of Syngenta's allegedly privileged documents and testimony regarding these issues to resolve Zurich's Section 2711 claim."[52]

---

[50] App. to Answering Br. at B475–76.

[51] *Id.* at B469–78. Zurich concedes that Syngenta's 2018 application included notice of the Hoffman Action, but alleges that Syngenta understated the related costs. Zurich's complaint also sought recoupment of defense costs advanced by Zurich for the paraquat Parkinson's disease claims and restitution. *Id.* at B478–79. Those claims are not before us on appeal.

[52] App. to Opening Br. at A878.

11

In a transcript ruling, the Superior Court granted Zurich's motion in part and denied it in part. The court determined that the "at issue" exception was only partially implicated[53] by the positions taken by Syngenta and thus ordered Syngenta to produce certain otherwise privileged communications in redacted form. Documents that "relay[ed] factual information . . . [about] what Tillery said, or . . . information [Syngenta]found out about 200 other product claims . . ."[54] were to be produced. Under the court's ruling, however, Syngenta was permitted to redact "the attorneys' reactions, their work product or the advice or the other privileged communication which was transmitted to the client on the basis of that factual information."[55]

E

After discovery, the parties filed cross-motions for partial summary judgment on the issue that is central to Zurich's appeal: whether Zurich had a duty to defend and indemnify Syngenta in the Paraquat Actions. Because the Zurich Policies excluded coverage for "claim[s] for damages" made against Syngenta before the policies' inception, the answer hinged upon the Superior Court's determination whether the Tillery Letter—indisputably received before inception—was a claim for

---

[53] Opening Br. Ex. 3 at 52.
[54] *Id.* at 51–52.
[55] *Id.* at 52.

12

damages. The court found that it was not and entered summary judgment in Syngenta's favor.

After the ruling, Zurich filed an amended complaint again seeking a declaration that Zurich owed no duty to defend and indemnify Syngenta for the Paraquat Actions. Zurich reasserted, based on new documents produced by Syngenta, that the Tillery Letter constituted a claim for damages. Zurich also requested recoupment of defense costs advanced to Syngenta and restitution. Syngenta in turn filed amended counterclaims asserting that Zurich's denial of coverage was made in bad faith.

The parties again filed cross-motions for summary judgment on the issue of whether the Tillery Letter constituted a claim for damages. Zurich also moved for summary judgment on its claims for recoupment and restitution and on Syngenta's bad-faith counterclaim, alleging for the latter that Zurich's denial of coverage was reasonable and justified. Syngenta sought summary judgment on Zurich's amended complaint in its entirety; it argued that the court's August 3, 2020 opinion was not subject to reconsideration and that Syngenta had made no material omissions or misrepresentations in its application for insurance.

The court concluded that "no newly-discovered evidence or additional factual submission" raised a genuine issue of material fact on whether the Tillery Letter was a "claim for damages" and announced that "[t]he [c]ourt's decision on Zurich's duty

13

to defend Syngenta under the Primary and Umbrella Policies, for purposes of the Paraquat Actions, remains unchanged."[56] Because it found that Zurich had the duty to defend, the court also denied as moot Syngenta's motion for summary judgment on Zurich's claims for recoupment and restitution. The court granted Zurich's motion for summary judgment on Syngenta's bad-faith counterclaim because it determined that there was a *bona fide* dispute over coverage. And finally, the court found that genuine issues of material fact precluded the entry of summary judgment on Zurich's § 2711 claim.[57]

F

The Superior Court's summary-judgment rulings disposed of all but Zurich's request for summary judgment on its § 2711 claim and its related claims[58] for reimbursement of defense costs. After a six-day bench trial, the Superior Court found that Syngenta's failure to disclose the Kirkland Fees and the Tillery Letter on its application for insurance was not material under 18 *Del. C.* § 2711(2) and (3). Consequently, the court denied Zurich's request for a declaratory judgment and for reimbursement of defense costs.

---

[56] *Zurich Am. Ins. Co. v. Syngenta Crop Prot. LLC*, 2022 WL 4091260, at *5 (Del. Super. Ct. Aug. 24, 2022).

[57] *Id.* at *8–9.

[58] In its amended complaint, Zurich requested separately recoupment of defense costs and restitution. Syngenta's motion for summary judgment on those counts was dismissed as moot in the August 24, 2022 opinion. *See id.* The counts were subsequently denied in the post-trial opinion on Zurich's § 2711 claim. *See Zurich Am. Ins. Co. v. Syngenta Crop Prot. LLC*, 2023 WL 2671799 (Del. Super. Ct. Mar. 28, 2023).

14

In this appeal, Zurich does not contest the Superior Court's post-trial decision; instead, it challenges two pretrial rulings. First, Zurich argues that the Superior Court erred by denying its motion for summary judgment on its claim that, because the Tillery Letter was a claim for damages before the Zurich Policies incepted, there was no coverage under its policies. Second, Zurich contends that the Superior Court erred when it denied its motion to compel Syngenta's privileged communications under the "at issue" exception. For its part, Syngenta cross-appeals, challenging the Superior Court's entry of summary judgment in Zurich's favor on Syngenta's bad-faith claim.

## II

### A

The interpretation of an insurance contract is a question of law subject to *de novo* review.[59] We also review the Superior Court's grant of summary judgment *de novo*.[60]

Zurich has the duty to defend Syngenta in, and to pay damages resulting from, suits claiming bodily injuries covered under the Zurich Policies.[61] The parties do not dispute that the claims made in the Paraquat Actions are of the type that qualify for coverage. The only remaining coverage dispute is whether the Paraquat Actions

---

[59] *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 905 (Del. 2021).
[60] *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1276 (Del. 1994).
[61] *See* App. to Opening Br. at A730.

15

are excluded from coverage because the Tillery Letter, when considered with "other facts known to Syngenta,"[62] constitutes a "claim for damages" predating the Zurich Policies' inception.[63]

As we have noted, the Superior Court addressed this issue first in response to the parties' initial cross-motions for summary judgment. In its August 3, 2020 opinion, the court found that the Tillery Letter, standing alone, was not a claim for damages as that term is used in the Zurich Policies. The letter's failure to "identify any individual claimant or clarify any facts" was insufficient, the court wrote, to put Syngenta "on notice that there [was] an *actual* person or persons who [were] intending to file a claim for damages."[64] According to the court the letter "constituted a threat of *future* litigation,"[65] but the threat was "too unclear or amorphous . . . to constitute a claim for damages."[66]

After document production, Zurich moved yet again for summary judgment on this issue, this time asserting that documents produced by Syngenta after the court's August 3, 2020 ruling showed that the Tillery Letter was indeed a claim for damages. Zurich had learned in discovery that, in early 2016, Tillery had provided Syngenta's lawyers with additional information about the clients he represented in

---

[62] Opening Br. at 25.
[63] *Id.*
[64] Op. at *8 (emphasis in original).
[65] *Id.*
[66] *Id.* at *9.

anticipated paraquat litigation. Tillery had identified his "200" clients as "primarily men diagnosed in their 50s and 60s,"[67] describing them as mostly "grain farmers or applicators who worked on grain farms, [who] were either mixing/applying the product or were in the vicinity while it was applied."[68] He also said that he intended to file his bellwether cases in state court in southern Illinois. Yet Tillery still did not identify any client by name and expressed uncertainty as to when he might file an actual lawsuit. In its renewed motion, Zurich also highlighted that Syngenta's lawyers, in response to the Tillery Letter, had formed a "Paraquat Litigation Team."[69]

Syngenta responded that, if anything, the discovery record "conclusively confirmed the appropriateness of the Court's decision that no 'claim for damages' was made in 2016."[70] The centerpiece of Syngenta's argument in this summary-judgment round was Stephen Tillery's deposition testimony that, as of the last day of 2016, he had not demanded that Syngenta pay money, nor had he provided Syngenta or its counsel with the name or other identifying information about any claimant.

---

[67] Super. Ct. D.I. 248 at 3–4.
[68] *Id.* at 5.
[69] *Id.* at 4, 25, 28, 31.
[70] Super. Ct. D.I. 346 at 2.

The Superior Court was not persuaded by Zurich's effort to fortify the Tillery Letter with extraneous generalized communications from Stephen Tillery, noting that the "new" evidence did "not provide specific evidence or disclosure tied to any *individual* potential claimant."[71]  The court concluded that

> still there is not specific evidence - only groups and generalized categories such as: age range, occupation, gender, and a generalized disability that is the same as common Parkinson's symptoms. The alleged "new evidence" is still not sufficient to constitute a claim. There is no newly-discovered evidence or additional factual submission that raise **genuine** issues of **material** fact sufficient to present the case to the jury. The Court finds there was no "Claim for Damages" at the time coverage was denied. The Court's decision on Zurich's duty to defend Syngenta under the Primary and Umbrella Policies, for purposes of the Paraquat Actions, remains unchanged.[72]

On appeal, Zurich maintains its position that "[t]he Tillery Letter asserts a 'claim for damages' on the very face of the letter."[73]  Though Zurich assures us that we "need look no further than the letter itself"[74] to conclude likewise, it adds that the circumstances surrounding and following Syngenta's receipt of the letter confirms Zurich's conclusion.  Zurich provides a laundry list of the confirmatory circumstances, including Syngenta's settlement of lawsuits brought by Tillery years before, Tillery's identification of his purported clients as men in their 50s and 60s who had been exposed to Paraquat and were severely disabled by Parkinson's

---

[71] *Zurich Am. Ins. Co.*, 2022 WL 4091260, at *5.
[72] *Id.*
[73] Opening Br. at 27.
[74] *Id.* at 37.

disease; the amount of fees Kirkland billed Syngenta in 2016 for Paraquat-related issues; Tillery's delivery of a litigation-hold notice to Syngenta; and Syngenta's parent's disclosure to its auditor in early 2016 that Tilley had "threatened litigation" in his January 2016 letter.[75]

Syngenta holds fast to its position that, under the unambiguous language of the Zurich Policies, the Tillery Letter—with or without Tillery's supplemental disclosures—does not constitute a "claim for damages." The letter "[n]either asked for money [nor] identified any injured parties,"[76] and was, according to Syngenta, nothing more than "a *threat* of a *future* claim for damages, which . . . does not constitute an *actual* claim of damages."[77]

B

"Insurance contracts, like all contracts, 'are construed as a whole, to give effect to the intentions of the parties.'"[78] Absent ambiguity, contract terms should be accorded their plain and ordinary meaning.[79] "A term is not ambiguous simply because it is not defined[,]"[80] nor is a term ambiguous because the parties do not agree on its proper construction.[81] "[A] contract is ambiguous only when the

---

[75] *Id.* at 37–42.
[76] Answering Br. at 4.
[77] *Id.* at 3–4.
[78] *RSUI Indem. Co.*, 248 A.3d at 905.
[79] *Id.*
[80] 1 Bradley W. Voss, *Voss on Delaware Contract Law* § 3.06 [2][j] at 3-35 (Jan. 2023) (citing *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 468 n.86) (Del. Ch. Jan. 17, 2008)).
[81] *RSUI Indem. Co.*, 248 A.3d at 905.

provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[82]

This court has not previously defined the term "claim for damages," nor have the parties pointed us to authority that squarely determines the meaning of the phrase. As more fully developed below, however, we can discern the ordinary meaning of "claim for damages": in the absence of a contractual definition, a "claim for damages," is a demand or request for monetary relief by or on behalf of an identifiable claimant. This is consistent with case law from this and other jurisdictions as cited by both parties in this case.

We begin with a Superior Court opinion that both Zurich and Syngenta cite in support of their preferred interpretations. Fifty years ago, in *Lamberton v. Travelers Indemnity Co.*,[83] the Superior Court confronted "[t]he question of whether the words in [a] deductible provision of [an architect's and engineer's professional liability policy], 'each claim' apply to each Occurrence of an incident or to each Assertion by a person injured by an incident that he is entitled to compensation therefor . . . ."[84] The court found it helpful to consider some "fundamental definitions" in its effort to determine whether the term "each claim" was ambiguous.

The court reviewed the usual characteristics of a claim:

---

[82] *Id.* at 906.
[83] 325 A.2d 104 (Del. Super. Ct. 1974), *aff'd*, 346 A.2d 167 (Del. 1975).
[84] *Id.* at 106.

20

> The entire concept of the word, when viewed broadly, brings to mind someone who is asserting a right to something in the possession of another. A 'claim' is a challenging request, a demand of a right, a calling upon another for something due, a demand for benefits or payment, a privilege to something, a title to something in the possession of another, an assertion or statement, or a demand for payment under an insurance policy upon the happening of a contingency against which the policy is issued.[85]

With the exception of "an assertion or statement," all the definitions mentioned by the Superior Court strongly suggest that a claim involves the assertion of a right or a demand for a remedy. And, from our viewpoint, when "claim" is said to mean "assertion or statement," it refers to "a statement that something yet to be proved is true,"[86] such as when a person makes a "claim" that a signed confession was coerced or that a traffic light was green immediately preceding a collision. It seems obvious that "claim" is not used in that sense in the Zurich Policies. It only makes sense if it means something akin to a request for the enforcement of a right or a demand for a remedy. That this usage was intended by the contracting parties here is supported by the object of the "claim" at issue; it must be a "claim *for damages*." One does not make an "assertion or statement" for damages, but requests or demands them.[87]

Thus, as we read it, *Lamberton*, the only case cited in the section of Zurich's opening

---

[85] *Id.* at 107.

[86] *Claim*, Black's Law Dictionary (11th ed. 2019).

[87] To be sure, a claimant might "assert a claim for damages" but that construction gets us no closer to defining "claim" than when we started.

21

brief for the proposition that the Tillery Letter standing alone is a "claim for damages," provides meager support for Zurich's position.

More recently, in *AT & T Corp. v. Faraday Capital Ltd.*,[88] this Court addressed a directors and officers liability policy carrier's argument that "when a demand [for damages] is made in the form of a lawsuit, one lawsuit equals one 'Claim.'"[89] This Court observed that "[c]ourts that have addressed the meaning of the term 'Claim,' as used in liability insurance policies, generally conclude that the term is unambiguous and 'means and demand by a third party against the insured for money damages or other relief owed.'"[90] This definition dovetailed with the subject policy's definition of "Claim," which included both "a written or oral demand for damages . . ." and a "civil . . . proceeding initiated against any of the [Insureds] . . . ."[91] True, as Zurich argues, the Court in *AT & T* did not purport to determine the general meaning of "claim" under Delaware law. Even so, both the Court's recognition of a generally accepted meaning and the policy definition, at a minimum, confirm that the word "claim" in a liability insurance policy ordinarily connotes a demand of some sort.

---

[88] 918 A.2d 1104 (Del. 2007).
[89] *Id.* at 1107.
[90] *Id.* at 1108 (citing *Home Ins. Co. of Illinois v. Spectrum Info. Techs., Inc.*, 930 F.Supp. 825, 846 (E.D.N.Y. 1996)).
[91] *Faraday*, 918 A.2d at 1109.

Before turning to the case law from other jurisdictions cited by the parties, we pause to note that the meaning ascribed to "claim" in both *Lamberton* and *AT & T* lines up neatly with dictionary definitions. The definitions found in Black's Law Dictionary are illustrative. The most pertinent definitions there are "2. [t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional . . . [; and] 3. [a] demand for money, property, or a legal remedy to which one asserts a right. . . ."

In our view, under any of these definitions and characterizations of what is generally understood to be a "claim" under a liability insurance policy, the Tillery Letter falls short. If the letter demands—or even requests—anything, it is an opportunity to discuss a process by which claims not yet made might be adjudicated or otherwise resolved in the future. And even if it were a "claim," it does not request or demand "damages," a word that means "[m]oney claimed by, or ordered to be paid by one person to another as compensation for a loss or injury."[92] Try as it might and despite a comment by the trial court that might suggest otherwise (more about which we write later), Zurich simply cannot point to any request or demand for monetary relief in the Tillery Letter.

---

[92] *Damages*, Black's Law Dictionary (11th ed. 2019).

23

C

The cases from other jurisdictions upon which Zurich relies do not support its position that a letter from a lawyer threatening litigation on behalf of unidentified clients with only the vaguest reference to damages should be deemed a "claim for damages." For instance, in *Berry v. St. Paul Fire & Marine Insurance Co.*,[93] the United States Court of Appeals for the Eighth Circuit considered whether a letter from plaintiff's counsel to a sandblaster manufacturer was a "claim," defined under the relevant insurance policy as "a demand in which damages are alleged." The letter itself was captioned "Products Liability *Claim* of Ronald D. Berry[,] Sandblaster Model No. 350."[94] The letter stated that Berry had sustained personal injuries and permanent disability as the result of his use of the manufacturer's product, asserted an attorney's lien, and asked the manufacturer to forward the letter to the manufacturer's products liability insurance carrier. The court concluded that the letter, "fairly read, clearly qualifies as a 'claim.'" But, in opposition to that conclusion, the carrier argued that the letter, containing no specific demand for payment, was nothing more than "a communication of a present legal right."[95] The court made short work of that argument:

> We think the argument is strained. True, the letter does not request payment of a specific dollar amount, but sometimes complaints in

---

[93] 70 F.3d 981 (8th Cir. 1995).
[94] *Id.* at 982 (emphasis added).
[95] *Id.*

actions actually filed in Court don't either, so this omission does not seem inconsistent with the letter's being treated as a "claim." Treating the letter as other than a claim, it seems to us, requires a tortured construction of its text. In our view, anyone receiving this letter would know that Mr. Berry was claiming that he was owed money.[96]

The same simply cannot be said of the Tillery Letter and the surrounding communications in which not a single person was identified as having a claim for money against Syngenta.

In a similar vein, in *Carosella & Ferry, P.C. v. TIG Insurance Co*.,[97] the court had before it a letter from a lawyer to his client's former lawyer threatening a professional malpractice lawsuit. The letter was pointed:

> You are hereby notified of the intent of Mr. and Mrs. Bradley to file an action against you and your law firm for professional malpractice consisting of your failure timely to litigate the issues raised in our subsequent Motion to Strike Confessed Judgment. If you have not already done so, please notify your errors and omissions carrier at once. . . . [98]

Under the relevant policy, there was coverage for wrongful acts, errors or omissions occurring before the policy period but only if the insured "prior to the policy period" did not have "a reasonable basis to foresee that a Claim would be made against an Insured."[99] Because the insured received the above-quoted letter before the policy's inception, the court concluded that, "[a]pplying this standard of

---

[96] *Id.*
[97] 189 F. Supp. 2d 249 (E.D. Pa. 2001).
[98] *Id.* at 250.
[99] *Id.* at 252–53.

foreseeability to the facts of this case, it is plain the Bradleys' claim is not covered by the policy."[100] It is difficult to discern how this finding, so tightly linked to the foreseeability of a claim by identified clients who have stated through their attorney a present intention to file suit, supports Zurich's contention that the Tillery Letter is a "claim for damages."

Equally unavailing is *Westrec Marina Management, Inc. v. Arrowhead Indemnity Co.*,[101] a California case in which coverage hinged on whether Westrec had timely reported a claim as required by the policies issued by Arrowhead. The underlying claim against Westrec was brought by an employee alleging that she had been subjected to employment discrimination and wrongful termination. Before filing suit, the employee's lawyer had sent a letter to Westrec describing the employee's claims and confirming that the employee had received a right-to-sue notice from the Department of Fair Employment and Housing. The purpose of the letter was "to see if Westrec would prefer to attempt to resolve or mediate this matter, or if it will be necessary to file a lawsuit and have a jury decide the outcome."[102] In the California court's eyes, the letter "clearly expressed [the employee's] intent to

---

[100] *Id.* at 253.
[101] 78 Cal Rptr. 3d 264 (Cal. Ct. App. 2008).
[102] *Id.* at 266–67.

sue Westrec for employment discrimination if an appropriate settlement could not be reached."[103] Unremarkably, the court construed the letter as

> a settlement demand seeking monetary compensation for the alleged wrongdoing. Although the letter did not expressly demand payment or refer to any specific amount, its meaning was clear that, absent some form of negotiated compensation, Clark would commence a lawsuit against Westrec. The attorney's request for compensation while threatening litigation was a "demand," as that word is ordinarily understood.[104]

And a written settlement demand fell within the policies' definition of "claim," which included "a written demand for civil damages or other relief."[105] By contrast, the Tillery Letter neither makes nor seeks any relief on behalf of any individual claimant.[106]

For its part, Syngenta cites numerous cases from which it derives that a "claim for damages" must take the form of a "demand or request for monetary payment."

---

[103] *Id.* at 268.

[104] *Id.*

[105] *Id.*

[106] *Compare* App. to Opening Br. at A140 (Tillery Letter) *with* the remaining authorities Zurich relies on in its briefing to support the claim that the Tillery Letter is a "claim for damages" under the Zurich Policies—*Precis, Inc. v. Fed. Ins. Co.*, 184 F. App'x 439, 441–42 (5th Cir. 2006) (letter sent by a known claimant demanding monetary payment and the policy defined claim as a "written demand for monetary damages"); *Pine Mgmt., Inc. v. Colony Ins. Co.*, 2023 WL 2575082, at *1 (S.D.N.Y. Mar. 20, 2023) (letter demanding damages on behalf of a known claimant and the policy defined claim as a "written demand . . . for monetary, nonmonetary[,] or injunctive relief"); *Paradigm Ins. Co. v. P & C Ins. Sys., Inc.*, 747 So. 2d 1040, 1041 (Fla. Dist. Ct. App. 2000) (letter sent on behalf of a known claimant and the policy defined claim as "a demand for money or services made by a third party, made in writing against the Insured[,] and actually received by the Insured"); *Herron v. Schutz Foss Architects*, 935 P.2d 1104, 1107 (Mont. 1997) (letter sent on behalf of a known claimant and the policy defined claim as "the receipt of a demand for money or services, naming you and alleging a wrongful act.").

The policies under consideration in many of those cases, unlike the Zurich Policies, define "claim," as including the elements of "demand" or monetary relief and, in some cases, both. For example, the policy in *Employers Insurance of Wausau v. Bodi-Wachs Aviation Insurance Agency, Inc.*,[107] defined "claim" as including "all claims or suits for damages" and, in turn, stated that "damages" means "monetary judgment, award or settlement."[108] Likewise, in a case decided by our Superior Court, *Sycamore Partners Management., L.P. v. Endurance American Insurance. Co.*,[109] the policies defined "claim" as "any written demand for monetary or non-monetary relief (including, but not limited to, injunctive relief) commenced by the receipt of such demand."[110] And, as mentioned above, the policy before this Court in *AT & T Corp. v. Faraday Capital Ltd.*, defined "claim" as including "a written oral demand for damages . . . ."[111]

---

[107] 39 F.3d 138 (7th Cir. 1994).

[108] *Id.* at 141.

[109] 2021 WL 4130631 (Del. Super. Ct. Sept. 10, 2021).

[110] *Id.* at *2.

[111] *Faraday*, 918 A.2d at 1104. *See also Med. Depot Inc. v. RSUI Indem. Co.*, 2016 WL 5539879, at *8 (Del. Super. Ct. Sept. 29, 2016) (defining claim as "a written demand for monetary relief."); *Myers v. Interstate Fire & Cas. Co.*, 2008 WL 276055, at *4 (M.D. Fla. Jan. 30, 2008) (defining claim as "a demand for money, or the filing of [a] Suit naming the Named Insured and alleging a Bodily Injury or Property Damage as a result of a Medical Incident"); *Nat'l Fire Ins. v. Bartolazo*, 27 F.3d 518, 519 (11th Cir. 1994) (defining claim as "the receipt by you of a demand for money or services, naming you and alleging a medical incident."); *MHM Corr. Servs., Inc. v. Evanston Ins. Co.*, 2023 WL 4743754, at *7 (Ill. App. Ct. July 25, 2023) (defining claim as either a "demand for monetary damages . . . [or] service of a suit against the Insured."); *Harris Thermal Transfer Prods., Inc. v. James River Ins. Co.*, 2010 WL 2942611, at *2 (D. Or. July 19, 2010), *aff'd*, 457 F. App'x 660 (9th Cir. 2011) (defining "'Claim'" for coverage purposes as 'a written demand for monetary damages'"); *SNL Fin., LC v. Philadelphia Indem. Ins. Co.*, 455 F. App'x 363, 365 (4th Cir. 2011) (defining claim as either "a written demand for monetary or non-monetary relief . . .

28

D

As can be seen, the policies at issue in the cases Zurich and Syngenta cite in support of their respective arguments as to whether the Tillery Letter was a "claim for damages" typically provide some explicit definitional guidance as to the meaning of "claim." This dims the light they might otherwise shed on the Zurich Policies, which are devoid of such guidance. Still, they are illustrative of what is typically characterized as a "claim"—and, in turn, "a claim for damages"—under a liability insurance policy.

First among the characteristics of a "claim" is the existence of an identifiable claimant. Zurich faults the Superior Court for not identifying any policy language, case law, or other justification supporting such a requirement. It argues further that, even if the requirement exists, "Mr. Tillery's affirmative representation that his firm was retained by clients should have been sufficient to put Syngenta on notice"[112] that he represented actual claimants.

---

[or] a judicial or civil proceeding commenced by the service of a complaint or similar pleading."); *Clarendon Nat'l Ins. Co. v. Muller*, 237 F. App'x 451, 452 (11th Cir. 2007) (defining claim as "a demand received by the Insured for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services."); *Fla. Dep't of Fin. Servs. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2012 WL 760606, at *3 (N.D. Fla. Mar. 7, 2012) (noting that under the policy a claim could include a "demand" for non-monetary relief . . . "reported to the Insurer ... for any actual or alleged Wrongful Act."); *McCullough v. Fid. & Deposit Co.*, 2 F.3d 110, 113 (5th Cir. 1993) (policy required "the insured to give written notice of specified wrongful acts"); *Chatz v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 372 B.R. 368, 373 (N.D. Ill. 2007) (policy required "full particulars" for notice requirement to be satisfied).
[112] Opening Br. at 30.

Zurich's concern about the absence of policy language or case law supporting the proposition that only an identifiable claimant or someone acting on her behalf can make a "claim for damages" is puzzling. The proposition is inherent in the very concept of a claim for damages, which evokes questions that can only be answered with reference to the specific, identifiable person making the claim. Who, for instance, but an identifiable claimant herself, can confirm the nature and extent of the damages, especially to the extent that they are unique and distinguishable from the damages suffered by other claimants? It is not difficult, moreover, to conceive practical difficulties that would attend the adoption of Zurich's position. For example, how does one address, evaluate, or satisfy a claim for damages when the identity of the claimant is concealed?

That the existence of an actual, identifiable claimant is implicit in the concept of a "claim for damages" also explains the absence of case law on this point. Indeed, every case cited by the parties in their briefing involves an actual named claimant. In this regard, we are not persuaded by Zurich's contention that a lawyer's representation that his firm has been retained by unidentified clients who intend to bring a claim in the future should suffice to put an alleged tortfeasor on notice that there is an actual person making a claim for damages. Once again, Zurich's argument overlooks the essence of a "claim," which is a demand or request for relief. One cannot plausibly demand or request relief, much less money damages, on behalf

of a client whose identity is unknowable to the person or entity upon whom the demand is made. Simply put, Zurich has offered nothing that casts doubt on the notion that the existence of an identifiable claimant is an essential element of a "claim for damages."

The claims addressed in the cited authorities also share the common characteristic of claiming something more than that wrongdoing occurred; they request or demand relief.[113] On this point, it bears noting that the provision we are interpreting here, in contrast to the cases that seek to discern the meaning of "claim," explicitly requires a request or demand for relief, that is "for damages." A "claim for damages," however—and here we agree with Zurich—need not demand a sum certain.[114] Finally, the case law teaches that mere threats or statements of intention

---

[113] *Sycamore Partners Mgmt., L.P.*, 2021 WL 4130631, at *18 ("identifying a wrongdoing, without demanding relief, is not a Claim."); *Bartolazo*, 27 F.3d at 519 (letter "merely request[ing] medical records and allud[ing] to a claim for malpractice" but "ma[king] no demand for money or services" was not a "claim"); *MGIC Indem. Corp. v. Home State Sav. Ass'n*, 797 F.2d 285, 288 (6th Cir. 1986) ("[t]he word 'claim,' . . . is one of those 'words of many-hued meanings [which] derive their scope from the use to which they are put' . . . the only kind of 'claim or claims' that could trigger the insurer's obligation to pay would be a demand for payment of some amount of money."); *Klein v. Fid. & Deposit Co. of Am.*, 700 A.2d 262, 270–75 (Md. Ct. Spec. App. 1997) (threatening letters not "claims" because they "at most, simply warn[ed] that claims were likely to be filed" and did not "explicitly or implicitly, demand money[.]").

[114] *Berry*, 70 F.3d at 982 (letter did not state "damages of a particular dollar amount"); *Precis, Inc.*, 184 F. App'x at 441 ("[t]he fact [the claimant] does not propose a specific amount for settlement does not mean that the letter is not a demand for money."); *Pine Mgmt. Inc.*, 2023 WL 2575082, at *3 ("a 'demand that [an insured] rectify a problem' can be sufficient to constitute a claim."); *Herron*, 935 P.2d at 1109 (letter making "no request for a specific dollar amount," was a claim where on its face it indicated that it sought payment by requesting that the insured contact its insurance carrier).

to file a lawsuit or claim and some indefinite future date is not a claim for damages."[115]

E

We return then to where we began our analysis of the ordinary meaning of "claim for damages." To reiterate, our case law does not dictate, but is consistent with, our conclusion that a "claim for damages" is a demand or request for monetary relief by or on behalf of an identifiable claimant. We are satisfied that this definition is in accord with how other courts have treated similar, though not identical, claims-made provisions of liability insurance policies.

We are equally convinced that the Superior Court correctly concluded that the Tillery Letter and related communications did not constitute a "claim for damages" under the Zurich Policies. The letter, as mentioned before, does not identify any claimants, except in the vaguest terms. And because Stephen Tillery was not prepared to disclose the identity of the clients or to proceed with litigation, he could not—and did not—demand or request monetary relief on behalf of a claimant.

---

[115] *Emps. Ins. of Wausau, Inc.*, 39 F.3d at 142 (attorney letter referring to "the potential of a negligence claim against [the insured]" did not "constitute a clear demand for damages but merely notice that a demand may be made in the future."); *Med. Depot Inc.*, 2016 WL 5539879, at *1, *9 ("demand letter" in which an attorney "threatened to file a class action lawsuit" on behalf of his named client "if [the insured] did not bring itself into compliance" was a "precursor to a lawsuit for monetary relief," not a "Claim" under the policy); *In re Ambassador Grp., Inc. Litig.*, 830 F. Supp. 147, 154–55 (E.D.N.Y. 1993) (holding that although "claim" was not defined by the policy, a claim was "something more than the threat of a lawsuit" and a letter indicating "the likelihood, if not inevitability, of some future claim," did not constitute a "claim made" under the policy).

32

Zurich points out that the Superior Court "acknowledged that '[t]aken as a whole, the Tillery Letter is reasonably interpreted as *requesting* damages.'"[116] At first blush, the quoted statement would appear to clash with the Superior Court's earlier statement that "[t]he Tillery Letter did *not* request monetary damages."[117] The discrepancy is best explained, in our view, by the context within which the Superior Court found the letter "request[ed] damages" was made. Zurich leaves out that the quoted snippet was preceded by the court's conclusion that the letter was not a claim but a mere "threat of *future* litigation,"[118] and followed closely by a characterization of the letter as "proposing a future method by which to resolve any future claims."[119] Read in this light, the reference to "requesting damages" appears to refer, albeit imprecisely, to damages that might be recoverable under future claims or in future litigation.

III

Zurich contends that, should we agree, as in fact we have, with the Superior Court that the Tillery Letter was not a "claim for damages," then it should be entitled to a remand and discovery of certain attorney-client communications under the "at-issue" exception. According to Zurich, "[t]he trial court erred when it denied

---

[116] Opening Br. at 33 (quoting Op. at *9) (italics in original).
[117] Op. at *3 (emphasis added).
[118] *Id.* at *9 (emphasis in original).
[119] *Id.*

Zurich's motion to compel Syngenta's privileged communications with Kirkland under the 'at issue' doctrine because it effectively prevented Zurich from challenging Syngenta's purported belief that Tillery had no actual clients at the time he sent his letter in 2016."[120]

We decline Zurich's invitation to prolong this case so that it can peek into Syngenta's privileged communications. The Tillery Letter either is or is not a "claim for damages" regardless of Syngenta's lawyers' subjective beliefs. Zurich, moreover, appears to have understood that when it sought production of the communications in the Superior Court. Zurich sought the documents in furtherance of its § 2711 claim. On this point, its motion to compel could not be clearer:

> *discovery sought by Zurich is critical to a full understanding of the issues Syngenta has raised to defend against Zurich's Section 2711 claim*, including Syngenta's assertions that: (1) its failure to disclose information about the Tillery Letter was not an "omission" because it did not "reasonably expect" the allegations described by the Tillery Letter to exceed $2 million in loss if lawsuits materialized; and (2) even if the failure to disclose the Tillery Letter was an "omission," it was not "material" because Zurich's knowledge of the risks surrounding Paraquat was equivalent to Syngenta's own knowledge.[121]

---

[120] Opening Br. at 8.
[121] Super. Ct. D.I. 142 at 3 (emphasis added).

Having not appealed the Superior Court's rejection of its § 2711 claim after trial, Zurich may not now revive a discovery claim that it did not fairly present below.[122]

IV

In its cross appeal, Syngenta asserts that the Superior Court erred in dismissing Syngenta's bad-faith counterclaim. This is so, Syngenta contends, because the court "did not consider Zurich's failure to perform any investigation into the stated basis for denial before denying coverage"[123] and because Zurich's denial of coverage in reliance upon the Tillery Letter was pretextual, and thus, in bad faith. Zurich responds that it had a reasonable justification to deny coverage at the time of the denial "both on the basis that the Tillery Letter constituted a 'claim for damages' that was 'first made' prior to the inception of the Zurich Policies . . . and on the basis that that Syngenta failed to disclose material information about the Tillery Letter in violation of 18 *Del. C.* § 2711[.]"[124]

"In order to establish 'bad-faith' the [policyholder] must show that the insurer's refusal to honor its contractual obligation was clearly without any

---

[122] Under Supr. Ct. R. 8, "[o]nly questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented." Here, the interests of justice do not weigh in favor of considering and determining this issue.
[123] Answering Br. at 6.
[124] Zurich Reply Br. at 37.

35

reasonable justification."[125] Reasonable justification requires that, at the time of the denial, facts or circumstances were known to Zurich that created a *bona fide* coverage dispute and therefore a meritorious defense to the insurer's liability.[126] "Where the issue to be tried is one of disputed fact, the question of bad faith refusal to pay should not be submitted to the jury unless it appears that the insurer did not have reasonable grounds for relying on its defense to liability."[127]

At the time Zurich denied coverage, that is, two weeks after it first received a copy of the Tillery Letter, Zurich was aware of the following facts and circumstances: that the Tillery Letter predated the Zurich Policies; that Syngenta had incurred the Kirkland Fees dating back to the receipt of the Tillery Letter; that the Tillery firm had filed at least twelve actions against Syngenta; and that Syngenta had not mentioned the Tillery Letter in its application for the Zurich Policies. In our view, these facts provided a reasonable justification for challenging coverage at the time of the denial. Syngenta's argument that Zurich's reliance on these facts is pretextual is unavailing— an insurer's purported motive, as alleged by the insured, is irrelevant on a bad-faith claim where reasonable grounds for the denial exist.[128]

---

[125] *GEICO Gen. Ins. Co. v. Green*, 276 A.3d 462, 2022 WL 1052195, at *8 (Del. 2022) (TABLE) (quoting *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 369 (Del. 1982)).

[126] *Id.*

[127] *Casson*, 455 A.2d at 369.

[128] *See id.* at 368–70 (discussing that even if the court accepted the factual inference that the insurer's decision "was a deliberate attempt to deny [the insured] benefits," because the court had determined that a *bona fide* coverage dispute otherwise existed, the record "simply fail[ed] to support [an] argument that no reasonable basis" for denial existed).

Further, that we have determined on appeal that the Tillery Letter cannot be reasonably read as a "claim for damages" does not require us to accept Syngenta's assertion that Zurich's argument on this point was made in bad faith. A lack of success in litigation does not negate a finding that there were reasonable grounds, at the time of the denial, for Zurich to rely on its belief that the Tillery Letter was a claim for damages.[129]

Further, Zurich's § 2711 claim stood as a separate basis for Zurich's coverage denial, and at the time of the Superior Court's ruling it found that there were "at least questions of fact regarding Zurich's position that coverage [wa]s barred under 18 *Del. C.* § 2711." The "basic question [of] whether Syngenta failed to provide material information about the Tillery Letter" on its application for insurance created "at a minimum . . . a *bona fide* dispute over coverage," and that was sufficient to defeat Syngenta's bad faith claim.[130] We agree that Zurich's denial of coverage under § 2711 based on the facts as it understood them at the time it denied coverage was not, on the undisputed facts, "clearly without any reasonable justification."[131] Hence, the Superior Court's entry of summary judgment on Syngenta's bad-faith counterclaim was not erroneous.

---

[129] *See Ace Am. Ins. Co. v. Guaranteed Rate, Inc.*, 305 A.3d 339, 350 (Del. 2023) (upholding dismissal of bad faith claim where the insurer's denial rested on "colorable arguments" with which the Court ultimately disagreed—"[a]lthough we may ultimately disagree with [the insurer's] position, we cannot say that its position clearly lacks reasonable justification.").
[130] *Zurich Am. Ins. Co.*, 2022 WL 4091260, at *6.
[131] *Casson*, 455 A.2d at 369.

## V

For the reasons set forth above, we affirm the judgment of the Superior Court as reflected in its August 3, 2020 and August 24, 2022 opinions, its March 4, 2021 transcript ruling and order, and its March 28, 2023 post-trial opinion.